UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
JEFFREY KOONCE, Case No.: 26-cv-02310 (KMK)

Plaintiff,

-against-

CITY OF MOUNT VERNON; COUNTY OF WESTCHESTER; Detective JAMES GARCIA; Detective Lieutenant ROBERT ASTORINO; Detective DANIEL SALOTTOLO; JOHN DOES 1–10; JOHN DOE 11, as Administrator of the Estate of ANTHONY M. MOSCA; JOHN DOE 12, as supervising officer of the MVPD detective unit; and CHRISTOPHER J. O'BRIEN as Executor of the Estate of JAMES H. O'BRIEN,

Defendants.
-----------------------------------------------------------------------X

**MEMORANDUM OF LAW**
**IN SUPPORT OF DEFENDANT COUNTY OF WESTCHESTER'S**
**MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

Of Counsel:
J. Patrick Carley, III, Esq.

TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP
445 Hamilton Avenue, Suite 900
White Plains, New York 10601
(914) 347-2600
*Attorneys for Defendant*
*County of Westchester*

# TABLE OF CONTENTS


PRELIMINARY STATEMENT ....... 1

RELEVANT ALLEGATIONS ....... 3

LEGAL STANDARD ....... 3

ARGUMENT ....... 4

POINT I -- THE TAC FAILS TO STATE A *MONELL* CLAIM AGAINST THE COUNTY BASED UPON CONDUCT OF THE WCDA ....... 4

A. The TAC Fails to Allege An Underlying Constitutional Violation ....... 5

1. Directing/Authorizing The Show-Up Identification Did Not Violate Plaintiff's Rights ....... 5

2. The TAC Fails To Allege That ADA Smith Elicited False Testimony ....... 7

3. The TAC Fails To Allege That The ADAs Withheld *Brady/Giglio* Material ....... 9

4. The Alleged Summation Misconduct Did Not Violate Plaintiff's Rights ....... 12

B. The TAC Fails To Allege An Official Policy or Custom ....... 13

1. The TAC Does Not Plausibly Plead A Widespread Practice ....... 14

2. The TAC Does Not Plausibly Plead A Failure To Train ....... 16

3. The TAC Does Not Plausibly Plead A Failure To Supervise Or Discipline ....... 18

POINT II -- THE TAC FAILS TO STATE A *MONELL* CLAIM AGAINST THE COUNTY BASED UPON ACTIONS OF A WCDA POLICYMAKER ....... 21

POINT III -- THE COURT SHOULD NOT EXERCISE SUPPLEMENTAL JURISDICTION ....... 25

POINT IV -- THE TAC FAILS TO STATE A CLAIM AGAINST THE COUNTY FOR NEGLIGENT HIRING, TRAINING, RETENTION AND SUPERVISION ..................................26

POINT V-- THE TAC FAILS TO STATE A CLAIM AGAINST THE COUNTY FOR VIOLATING NEW YORK STATE CONSTITUTIONAL DUE PROCESS ....................................................29

POINT VI -- PLAINTIFF'S CLAIM FOR *RESPONDEAT SUPERIOR* FAILS ......................................................................31

CONCLUSION......................................................................................................................33

WORD COUNT CERTIFICATION .........................................................................................34

**TABLE OF AUTHORITIES**

**CASES** **PAGE(S)**

*Amnesty Am. v. Town of W. Hartford*,
361 F.3d 113 (2d Cir. 2004) ........ 22

*Aschroft v. Iqbal*,
556 U.S. 662 (2009) ........ 3

*Atadzhanov v. City of N.Y.*, No. 21-cv-5098(LJL),
2022 U.S. Dist. LEXIS 169083 (S.D.N.Y. Sept. 19, 2022) ........ 14

*Bellamy v. City of N.Y.*,
914 F.3d 727 (2d Cir. 2019) ........ 13

*Brisco v. Ercole*,
565 F.3d 80 (2d Cir. 2009) ........ 21

*Brown v. State of N.Y.*,
89 N.Y.2d 172 (1996) ........ 30

*Buari v. City of N.Y.*,
530 F. Supp. 3d 356 (S.D.N.Y. 2021) ........ 14, 16, 19

*Capalbo v. U.S.*, No. 10-cv-2563(RJH)(JLC),
2012 U.S. Dist. LEXIS 24005 (S.D.N.Y. Feb. 24, 2012) ........ 12

*Catzin v. Thank You & Good Luck Corp.*,
899 F.3d 77 (2d Cir. 2018) ........ 25

*Cerbone v. Cnty. of Westchester*,
508 F. Supp. 780 (S.D.N.Y. 1981) ........ 5, 6, 23

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) ........ 3

*Connick v. Thompson*,
563 U.S. 51 (2011) ........ 15, 16, 17, 18

*Conte v. Cnty. of Nassau*, No. 06-cv-4746(JFB)(ETB),
2010 U.S. Dist. LEXIS 104815 (E.D.N.Y. Sept. 30, 2010) ........ 23

*Delamota v. City of N.Y.*,
683 Fed. Appx. 65 (2d Cir. 2017) ........ 6

*Dixon v. von Blanckensee*,
994 F.3d 95 (2d Cir. 2021) ........ 3

*Douglas v. City of Peekskill*, No. 21-cv-10644(KMK),
2023 U.S. Dist. LEXIS 50738 (S.D.N.Y. 2023) ................................ 14, 15, 16, 17, 18, 19, 20

*D'Alessando v. City of N.Y.*, No. 13-cv-930(SLT),
2016 U.S. Dist. LEXIS 163616 (E.D.N.Y. Nov. 28, 2016) ............................................ 17, 18

*Ermichine v. U.S.*, No. 06-cv-10208(LAP)(JLC),
2011 U.S. Dist. LEXIS 51099 (S.D.N.Y. May 12, 2011) ...................................................... 12

*Furet v. City of N.Y.*, No. 22-cv-03172(MMG),
2025 U.S. Dist. LEXIS 172347 (S.D.N.Y. Sep. 4, 2025) ............................................... 26-27

*Greene v. City of N.Y.*,
742 F. App'x 532 (2d Cir. 2018) ........................................................................................... 18

*Hasan v. Onondaga Cnty.*, No. 18-cv-806(GLS/ATB),
2018 U.S. Dist. LEXIS 131727 (N.D.N.Y. Aug. 2, 2018) ............................................ 5, 7, 23

*Hayden v. Patterson*,
594 F.3d 150 (2d Cir. 2010) .................................................................................................... 3

*Hudson v. Cnty. of Duchess*,
51 F. Supp. 3d 357 (S.D.N.Y. 2014) ..................................................................................... 23

*Jenkins v. City of New York*, No. 91-cv-3639,
1992 U.S. Dist. LEXIS 8279 (S.D.N.Y. June 15, 1992) ....................................................... 32

*Jovanovic v. City of N.Y.*, No. 04-cv-8437(PAC),
2010 U.S. Dist. LEXIS 144388 (S.D.N.Y. Sept. 28, 2010) ............................................ 13, 18

*King-Knight v. City of N.Y.*, No. 23-cv-4648(PKC),
2025 U.S. Dist. LEXIS 59143 (S.D.N.Y. Mar. 28, 2025) .................................................... 6, 7

*Kramer v. Time Warner Inc.*,
937 F.2d 767 (2d Cir. 1991) .................................................................................................... 3

*Kyles v. Whitley*,
514 U.S. 419 (1995) ............................................................................................................... 10

*Lederman v. Benepe*, No. 12-cv-6028(PGG),
2016 U.S. Dist. LEXIS 197311 (S.D.N.Y. Mar. 11, 2016) ................................................... 31

*Lopes v. Westchester Cnty.*, No. 18-cv-8205,
2020 U.S. Dist. LEXIS 54177 (S.D.N.Y. Mar. 25, 2020) ..................................................... 19

*Magassouba v. City of N.Y.*, No. 23-cv-3686(KMK),
2024 U.S. Dist. LEXIS 105588 (S.D.N.Y. June 12, 2024) ................................................... 27

*Mastromonaco v. Cnty. of Westchester*,
779 F. App'x 49 (2d Cir. 2019) .......................................................................................... 5, 22

*McClean v. Cnty. of Westchester*, No. 17-cv-4492(CS),
2018 U.S. Dist. LEXIS 204269 (S.D.N.Y. Dec. 3, 2018) .................... 8

*McCray v. City of N.Y.*, No. 03-cv-9685(DAB),
2007 U.S. Dist. LEXIS 90875 (S.D.N.Y. Dec. 11, 2007) .................... 32

*Miller v. Cnty. of Monroe*, No. 23-cv-06649(FPG),
2024 U.S. Dist. LEXIS 97305 (W.D.N.Y. May 31, 2024) .................... 16

*Monell v. Dep't of Soc. Servs. of City of N.Y.*,
436 U.S. 658 (1978) .................... 4

*Murray v. City of N.Y.*,
283 A.D.2d 560 (2d Dept. 2001) .................... 26-27

*In re N.Y.C. Policing During Summer 2020 Demonstrations*,
548 F. Supp. 3d 383 (S.D.N.Y. 2021) .................... 14

*Newton v. City of N.Y.*,
566 F. Supp. 2d 256 (S.D.N.Y. 2008) .................... 30

*Oklahoma City v. Tuttle*,
471 U.S. 808 (1985) .................... 4

*Perkins v. N.Y.C*, No. 17-cv-423(RRM)(PK),
2019 U.S. Dist. LEXIS 167217 (E.D.N.Y. Sep. 27, 2019) .................... 7

*Reich v. City of N.Y.*, No. 19-cv-6491(EK)(RER),
2021 U.S. Dist. LEXIS 137948 (E.D.N.Y. July 23, 2021) .................... 8

*Revitalizing Auto Cmtys. Env't Response Tr. v. Nat'l Grid USA*,
92 F.4th 415 (2d Cir. 2024) .................... 3

*Ricciuti v. New York City Transit Auth.*,
941 F.2d 119 (2d Cir. 1991) .................... 16

*Rindgen v. Cnty. of Broome*, No. 24-cv-1325(AJB)(ML)
2025 U.S. Dist. LEXIS 233580 (N.D.N.Y. Dec. 1, 2025) .................... 31

*Robertson v. Fluerinord*, No. 23-cv-4977(JGK)
2024 U.S. Dist. LEXIS 204313 (S.D.N.Y. Nov. 8, 2024) .................... 26

*Roe v. City of Waterbury*,
542 F.3d 31 (2d Cir. 2008) .................... 4, 23

*Schoolcraft v. City of N.Y.*,
103 F. Supp. 3d 465 (S.D.N.Y. 2015) .................... 27

*Tieman v. City of Newburgh*, No. 13-cv-4178(KMK),
2015 U.S. Dist. LEXIS 38703 (S.D.N.Y. Mar. 26, 2015) .................... 19

*Torcivia v. Suffolk Cnty.*,
17 F.4th 342 (2d Cir. 2021) .................... 22

*U.S. v. Certified Environmental Services, Inc.*,
753 F.3d 72 (2d Cir. 2014) .................... 13

*U.S. v. Frank*,
11 F. Supp. 2d 322 (S.D.N.Y. 1998) .................... 11

*Velez v. City of N.Y.*,
730 F.3d 128 (2d Cir. 2013) .................... 27

*Burton v. Cnty. of Westchester*, No. 21-cv-1475(KMK),
2022 U.S. Dist. LEXIS 115402 (S.D.N.Y. June 29, 2022) .................... 32

*Wray v. City of N.Y.*,
490 F.3d 189 (2d Cir. 2007) .................... 7, 5, 6, 7, 21, 23

**STATUTES**

28 U.S.C. §1367 .................... 25

42 U.S.C. §1983 .................... 1, 4, 6, 11, 13, 16, 21

**RULES**

Fed. R. Civ. P. 12 .................... 1, 3, 33

Rule 7.1 .................... 34

**OTHER**

New York Constitution, Article I, §6 .................... 1, 29

This memorandum of law is submitted on behalf of defendant County of Westchester (hereinafter, "the County"), in support of its motion for an Order: (i) pursuant to Fed. R. Civ. P. 12(b)(6) dismissing with prejudice the Third Amended Complaint dated August 12, 2026 ("TAC"); and (ii) for such other and further relief as the Court deems just and proper.

**PRELIMINARY STATEMENT**

This action arises out of Plaintiff's arrest, prosecution, conviction and imprisonment for an armed robbery and shooting that occurred in June 1981. Despite maintaining his innocence, testifying on his own behalf and presenting an alibi defense, Plaintiff was convicted by a jury in May 1983, and thereafter served approximately eight years in prison. Decades later, in 2024, following a reinvestigation by the Conviction Review Unit of the Westchester County District Attorney ("WCDA"), Plaintiff moved to vacate his conviction, with WCDA's consent, which the New York State Supreme Court (James A. McCarty, J.) granted. (*See* Declaration of J. Patrick Carley, III dated September 25, 2026 ("Carley Decl."), Ex. "A"). Critically, Judge McCarty rejected every argument advanced by Plaintiff that newly discovered evidence established that any of the Defendants herein engaged in misconduct during his investigation and prosecution, and instead vacated on other grounds.

Plaintiff nevertheless commenced this action, asserting five claims against the County: (i) *Monell* claim pursuant to 42 U.S.C. §1983 (Count Eight); (ii) *Monell* claim pursuant to 42 U.S.C. §1983 (Count Nine); (iii) New York common law claim for negligent hiring, training, retention and supervision (Count Twelve); (iv) *respondeat superior* (Count Fourteen); and (v) violation of New York Constitution, Article I, §6 (Count Fifteen). The TAC seeks to impose liability on the County on the basis that the WCDA, through its assistant district attorneys ("ADAs"), violated his constitutional and state law rights. However, despite asserting 367 allegations spanning 90 pages,

the TAC utterly fails to plead that the ADAs violated Plaintiff's rights, or that they did so pursuant to an official policy or custom maintained by the County, or that they engaged in acts that caused harm to Plaintiff. Indeed, the TAC alleges repeatedly—and deliberately—that the improprieties with the police investigation by the Mount Vernon Police Department ("MVPD") was concealed by the WVPD from the ADAs. In the absence of a viable *Monell* claim, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

For the reasons set forth below, and in the MVPD's motion papers, the arguments of which are hereby adopted and incorporated as if fully set forth herein to the extent they apply to the County as well, the TAC must be dismissed in its entirety, with prejudice, as to the County.

## RELEVANT ALLEGATIONS

The facts alleged against the County are identified throughout the Argument section below, in connection with the discussion of the individual cause(s) of action to which the facts relate. The instant motion only addresses those facts which are relevant to the County, and highlights the allegations against MVPD only to the extent they relate to the allegations against the County.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009); *accord Hayden v. Patterson*, 594 F.3d 150 (2d Cir. 2010). While a court must "accept as true" all "well-pleaded factual allegations in the complaint," it "need not consider conclusory allegations or legal conclusions couched as factual allegations." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021). The "court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *Revitalizing Auto Cmtys. Env't Response Tr. v. Nat'l Grid USA*, 92 F.4th 415, 436 (2d Cir. 2024). The court may also take judicial notice of documents "integral" to the complaint, *Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002), and "documents filed in other courts." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

## ARGUMENT

## POINT I

## THE TAC FAILS TO STATE A *MONELL* CLAIM AGAINST THE COUNTY BASED UPON CONDUCT OF THE WCDA

The eighth cause of action seeks to impose *Monell* liability on the County pursuant to 42 U.S.C. §1983. The TAC alleges that the WCDA, through the actions of its ADAs, violated Plaintiff's constitutional rights by: (1) directing/authorizing MVPD officers to conduct an unduly suggestive show-up identification; (2) knowingly eliciting and failing to correct false testimony provided from MVPD officers; (3) failing to disclose *Brady* material; and (4) engaging in trial summation misconduct. (TAC ¶¶275, 314). The TAC alleges that the violations of Plaintiff's constitutional rights were directly and proximately caused by an official policy or custom that the County, through the WCDA, maintained. (TAC ¶¶313-314).

"Congress did not intend municipalities to be held liable [under 42 U.S.C. §1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978). Thus, "to prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008). "There must at the very least be an affirmative link between the municipality's policy and the particular constitutional violation alleged." *Oklahoma City v. Tuttle*, 471 U.S. 808, 809 (1985).

### A. <u>The TAC Fails To Allege An Underlying Constitutional Violation</u>

"[A] *Monell* claim cannot succeed without an underlying constitutional violation." *Mastromonaco v. Cnty. of Westchester*, 779 F. App'x 49, 51 (2d Cir. 2019). The TAC fails to allege that the WCDA, through the ADAs, deprived Plaintiff of a constitutional right.

#### 1. Directing/Authorizing The Show-Up Identification Did Not Violate Plaintiff's Rights

The TAC alleges that after MVPD first arrested Plaintiff, ADA James H. O'Brien directed/authorized MVPD officers to bring Plaintiff to the hospital where the victim was recuperating to conduct a one-on-one show-up identification. (TAC ¶¶86, 275, 299). It is alleged that the show-up was conducted despite the absence of exigent circumstances and the availability of other witnesses to participate in proper identification procedures, contrary to then-settled law. (TAC ¶¶86, 90).

Plaintiff fails to plausibly allege that directing/authorizing MVPD officers to conduct the show-up violated his constitutional right. It is well-settled that there is no constitutional right not to be subjected to an unconstitutionally suggestive identification. *Wray v. City of N.Y.*, 490 F.3d 189, 193 (2d Cir. 2007). It is also well-settled that "[t]he mere failure of a 'show-up' to pass constitutional requirements, without a showing of resulting prejudice, does not establish a constitutional deprivation." *Cerbone v. Cnty. of Westchester*, 508 F. Supp. 780, 786 (S.D.N.Y. 1981). "If the identification procedures were unfairly suggestive, plaintiff's constitutional rights would not have been violated until he was convicted on the basis of the suggestive identifications." *Hasan v. Onondaga Cnty.*, No. 18-cv-806(GLS/ATB), 2018 U.S. Dist. LEXIS 131727, at *n.8 (N.D.N.Y. Aug. 2, 2018) ("It is the admission of the testimony carrying a likelihood of misidentification which violates a defendant's right to due process"), *citing Wray*, 490 F.3d at 193.

The TAC confirms that Plaintiff's show-up identification was suppressed by the trial court before trial. (TAC ¶125). Thus, the show-up did not violate Plaintiff's constitutional rights, since Plaintiff suffered no resulting prejudice. *See Cerbone*, 508 F. Supp. at 786 ("The preclusive effect of the County Court's pretrial rulings thus also requires dismissing Cerbone's §1983 claims").

Plaintiff's attempt to rescue his claim by alleging that the show-up tainted the victim's in-court identification (TAC ¶¶125-128, 365), is conclusory and speculative. That Plaintiff would even make such an allegation is shocking, given that Judge McCarty has already determined that the in-court identification was tainted, if anything, by the victim's observation of Plaintiff during the felony hearing. (Carley Decl. Ex. "A" p.3). Plaintiff's allegation that the show-up somehow influenced the trial court to permit the in-court identification (TAC ¶¶125-128, 365), is not only conclusory and speculative, but belied by the documentary evidence. The trial court specifically noted in its ruling that the victim's identification of Plaintiff in a photo array and testimony that he observed Plaintiff during the incident established the "independent source" for an in-court identification. (Carley Decl. Ex. "B"). The show-up thus played no role in the trial court's decision to allow an in-court identification.

In any event, the trial court's decision to permit the in-court identification, over Plaintiff's objection, also constitutes an independent intervening and superseding cause of harm. "The acts of other participants in the legal system that are taken subsequent to the suggestive showing may in turn break the chain of causation flowing from that misconduct." *King-Knight v. City of N.Y.*, No. 23-cv-4648(PKC), 2025 U.S. Dist. LEXIS 59143 (S.D.N.Y. Mar. 28, 2025), *citing Wray*, 490 F.3d at 193-194; *Delamota v. City of N.Y.*, 683 Fed. Appx. 65, 67 (2d Cir. 2017). As in *Delamota*, "[h]ere, there is a clear and independent intervening actor—the trial court—that admitted the identification evidence." 683 Fed. Appx. at 67. This is particularly true given the failure to

plausibly allege that the ADAs misled or pressured the trial court into allowing an in-court identification. *See Hasan*, *supra*, at *n.8, *citing Wray*, 490 F.3d at 193.

To be sure, while the TAC alleges that the show-up was inherently suggestive (*see* TAC ¶¶87-89),[1] the TAC repeatedly acknowledges that the MVPD officers withheld "the circumstances" that made the show-up suggestive from the WCDA. (TAC ¶¶91, 112(c), 113, 115). The TAC also acknowledges that the trial court was in fact already aware of "the circumstances" that made the show-up suggestive when it ruled to allow an in-court identification. Specifically, the trial court knew—because the victim had testified at the pretrial *Wade* hearing—"that Defendants Garcia and Salottolo had improperly primed [the victim] to identify Mr. Koonce." (TAC ¶125). The trial court also knew that Plaintiff was handcuffed and the only person presented during the show-up, because that information was in Plaintiff' direct knowledge. Thus, the trial court's ruling to permit an in-court identification, made with full knowledge of "the circumstances" of the show-up and over Plaintiff's objection, is an intervening and superseding act. *See King-Knight*, *supra*, at *42-43 (the independent decision of the hearing judge to permit the in-court identification was a superseding act that broke the chain of causation); *Perkins v. N.Y.C*, No. 17-cv-423(RRM)(PK), 2019 U.S. Dist. LEXIS 167217 (E.D.N.Y. Sep. 27, 2019) ("In cases in which a trial judge denies suppression of identification evidence notwithstanding unduly suggestive procedures, the trial court's action constitutes such an intervening cause"); *Wray*, 490 F.3d at 192-193.

**2. <u>The TAC Fails To Allege That ADA Smith Elicited False Testimony</u>**

The TAC alleges that ADA Mary Smith knowingly elicited and failed to correct false

[1] The TAC alleges that the show-up was inherently suggestive because: (i) MVPD told the victim beforehand that he was about to see the person he had already identified from the photo array (TAC ¶87); (ii) Plaintiff was presented to the victim while visibly handcuffed (*id.* ¶88); and (iii) Plaintiff was the only person presented during the show-up (*id.* ¶89).

testimony provided by MVPD Det. Salottolo during pretrial hearings and/or at the trial. (TAC ¶¶131-132). Specifically, it is alleged that Det. Salottolo falsely testified that: (i) MVPD received information prior to June 30, 1981 implicating Plaintiff; (ii) Plaintiff was provided *Miranda* warnings at the time of his arrest; (iii) the photo array was comprised of Plaintiff and five other "fillers" selected based on their match to Plaintiff; (iv) the blue tote bag was recovered from Plaintiff's apartment; and (v) MVPD investigated Plaintiff's alibi and determined it was not believable. (TAC ¶¶129, 275). The TAC alleges that ADA Smith knew or should have known based on her interviews of trial witnesses and review of police reports this testimony was false. (TAC ¶131).

Plaintiff fails to plausibly allege that ADA Smith violated a constitutional right by knowingly eliciting and failing to correct false testimony. As an initial matter, Judge McCarty previously determined that Plaintiff's claim that Det. Salottolo testified dishonestly lacked factual support and was buttressed by speculation. (Carley Decl. Ex. "A"). Even assuming, *arguendo*, that Det Salottolo testified falsely, the TAC contains a single allegation of ADA Smith's knowledge thereof: "by the time of trial, the assigned ADA, Mary Smith, knew, or the very least, should have known based on her interview of the trial witnesses and other police reports, that the…testimony was false." (TAC ¶131). This conclusory allegation is woefully inadequate. *See Reich v. City of N.Y.*, No. 19-cv-6491(EK)(RER), 2021 U.S. Dist. LEXIS 137948, at *18 (E.D.N.Y. July 23, 2021) (citing cases); *McClean v. Cnty. of Westchester*, No. 17-cv-4492(CS), 2018 U.S. Dist. LEXIS 204269, at *48 (S.D.N.Y. Dec. 3, 2018) ("there are no specific allegations as to what evidence ADA Prisco presented that she knew was false").

The TAC does not even identify which trial witness interviews or police reports refuted Det. Salottolo's testimony, or how they did so. Indeed, the very notion that unidentified police

reports and unnamed trial witnesses confirmed the testimony was false, is farcical. The TAC alleges that the police reports were misleading by omission (TAC ¶¶78, 109, 240, 241); thus, ADA Smith would not have been able to glean from those reports that Det. Salottolo testified falsely. The TAC also alleges that the MVPD officers lied to the ADAs when they were interviewed (TAC ¶¶110, 114); thus, ADA Smith would not have been able to glean from those interviews that Det. Salottolo testified falsely. Moreover, it should not be lost on the Court that the TAC admits that the information that would have revealed the falsity of the testimony was withheld from the WCDA by the MVPD. (TAC ¶¶9, 69, 91, 107, 109-116, 130, 207, 228, 231, 240-241).

**3. The TAC Fails To Allege That The ADAs Withheld *Brady*/*Giglio* Material**

The TAC alleges that the ADAs withheld *Brady* and *Giglio* material concerning the true composition of the photo array and the suggestiveness of the identification procedures. (TAC ¶¶275, 132). Specifically, it is alleged that the ADAs failed to disclose that the "fillers" in the photo array had prior armed robbery convictions and were thus selected because they were potential suspects and not because of their resemblance to Plaintiff. (TAC ¶¶66, 166). It is also alleged that the ADAs failed to disclose "the circumstances" of the show-up identification. (TAC ¶¶87-89, 91). According to Plaintiff, this was material exculpatory and impeachment information needed to confront Det. Salottolo's false testimony. (TAC ¶132).

Plaintiff fails to plausibly allege that the ADAs violated a constitutional right by withholding *Brady*/*Giglio* material. The TAC repeatedly and deliberately alleges that the information relating to "the true composition" of the photo array and "the circumstances" of the identification procedures was withheld from the WCDA by the MVPD. (TAC ¶¶9, 69, 91, 109-116, 130, 207, 231, 240-242). While an "individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the

police," *Kyles v. Whitley*, 514 U.S. 419, 437 (1995), the rule imputing knowledge of *Brady* material in the possession of members of the prosecution team, such as the police, to prosecutors does not apply in the context of *Monell* claims. The Hon. Cathy Seibel (U.S.D.J.) previously explained the rationale for this when granting the County's motion to dismiss a similar claim in *Jamal Smythe v. City of Yonkers, et al.*, No. 16-cv-02451(CS)(JCM) (S.D.N.Y. June 21, 2017).

Like Plaintiff here, Mr. Smythe asserted a *Monell* claim against the County, alleging that the WCDA ADAs violated his constitutional rights by failing to disclose *Brady* material concerning a confidential informant. Mr. Smythe argued that the ADAs were responsible even if they did not know about the confidential informant because *Brady* material in the possession of members of the police is imputed to prosecutors. Judge Seibel rejected Mr. Smythe's argument, holding that:

> There is a good rationale for concluding that the conviction of a defendant whose due process rights have been violated by the withholding of Brady material during the course of his prosecution is equally invalid whether that withholding results from the prosecutor's failure or the failure of others like the police who are members of the prosecution team. ***But no such imputation makes sense in the context of Section 1983 where liability is based on individual fault and personal involvement, and in some cases, employer liability where the individuals committing the violation do so pursuant to custom or policy***. It is thus surprise [sic] that plaintiff has supplied no case authority for the proposition that unwitting individuals can be liable under Section 1983 for misconduct on the part of codefendants, even if they were at one point members of the same prosecution team. In other words, that the fault of the police may be attributed to the prosecutors for purposes of plaintiff's criminal case does not mean that the same holds true for a 1983 case. See *Porter vs. White,* 483 F.3d 1294 at 1308, 11th Circuit 2007 where the court found negligent or inadvertent failure to turn over Brady material to be insufficient for 1983 liability. See also *Tennison vs. City and County of San Francisco,* 570 F.3d 1078 at 1088, 9th Circuit 2009 which said a 1983 plaintiff has to show deliberate indifference to or reckless disregard of the accused's rights on the part of the defendants. Even those cases that do not require bad faith, see, e.g., *Moldowan vs.*

> *County of Warren*, 578 F.3d 351 at 383, 6th Circuit 2009 recognized that the defendant has to be aware of the withheld evidence. ***Where, as here, there is no plausible allegation that the ADAs knew or should have known of the existence of the alleged exculpatory evidence or the alleged falsified evidence, it is difficult to see how they or their employer derivatively can be responsible under 1983 for failing to turn it over.*** In short, the AC alleges plausible claims for malicious prosecution and deprivation of the right to a fair trial but not on the part of the ADAs and, therefore, not on the part of the Westchester County.

Transcript of Oral Decision at pp.21-22, ECF Doc. 56, *Smythe v. City of Yonkers*, No. 16-cv-02451(CS)(JCM) (S.D.N.Y. June 21, 2017) (Emphasis added).[2]

That same scenario is presented here. The TAC admits that MVPD withheld "the true composition" of the photo array or "the circumstances" of the show-up identification from the ADAs. The TAC alleges that MVPD did this by, *inter alia*, falsifying police reports, lying in interviews with the ADAs and fabricating or concealing evidence. (TAC ¶¶9, 69, 91, 109-116, 130, 207, 231, 240-242). There are also no allegations that the ADAs personally participated in the identification procedures. Absent a plausible allegation that the ADAs knew or should have known of the existence of this alleged *Brady*/*Giglio* material, the County cannot be responsible under §1983 for the failure to disclose it.

Plaintiff's claim also fails because "[e]vidence…is not required to be disclosed [] if the defendant knows or should have known of 'the essential facts permitting him to take advantage of any exculpatory evidence.'" *U.S. v. Frank*, 11 F. Supp. 2d 322, 327 (S.D.N.Y. 1998). Plaintiff clearly knew about the exculpatory evidence concerning "the circumstances" of the show-up identification. For example, Plaintiff knew—by virtue of his personal involvement—that he was handcuffed and the only person presented during the show-up. (TAC ¶¶88-89). Plaintiff also knew that MVPD had primed the victim to identify him before the show-up, because—as the TAC

2 *See* Carley Decl. Ex. "C."

alleges (TAC ¶125)—the victim testified to same at the pretrial *Wade* hearing. Indeed, Plaintiff relied on "the circumstances" to successfully suppress the show-up. (TAC ¶125; Carley Decl. Ex. "B"). Plaintiff also knew about the exculpatory evidence concerning the "true composition" of the photo array because, as Judge McCarty previously ruled, the *Wade* hearing transcript established that the photo array had been shown to Plaintiff's defense counsel and discussed with Plaintiff. (Carley Decl. Ex. "A" p.4).

Finally, contrary to the claims in the TAC, prosecutors have no obligation to disclose *Brady* material that comes to light after trial. *Capalbo v. U.S.*, No. 10-cv-2563(RJH)(JLC), 2012 U.S. Dist. LEXIS 24005 (S.D.N.Y. Feb. 24, 2012); *Ermichine v. U.S.*, No. 06-cv-10208(LAP)(JLC), 2011 U.S. Dist. LEXIS 51099 (S.D.N.Y. May 12, 2011) ("The Supreme Court has explained that the prosecutorial duty to disclose exculpatory evidence under *Brady* is a 'preconviction trial right' that does not apply post-conviction or to post-conviction proceedings….").

**4. <u>The Alleged Summation Misconduct Did Not Violate Plaintiff's Rights</u>**

The TAC alleges that ADA Smith denied Plaintiff a fair trial by making a number of improper statements during summation. (TAC ¶¶135-144, 275). Plaintiff fails to plausibly allege that ADA Smith's purported summation misconduct violated his constitutional rights.

Second Circuit has described the relevant standard as follows: "When reviewing claims of prosecutorial misconduct based on inappropriate remarks in the Government's…summation[], we will reverse if the misconduct caused substantial prejudice by so infecting the trial with unfairness as to make the resulting conviction a denial of due process. In assessing whether prosecutorial misconduct caused 'substantial prejudice,' this Court has adopted a three-part test, which considers the severity of the misconduct, the measures adopted to cure the misconduct, and the certainty of

conviction absent the misconduct." *Bellamy v. City of N.Y.*, 914 F.3d 727, 762 (2d Cir. 2019), *quoting U.S. v. Certified Environmental Services, Inc.*, 753 F.3d 72, 95 (2d Cir. 2014).

The TAC confirms that Plaintiff's defense attorney objected to the purportedly improper statements in real time (TAC ¶¶135, 146), that the trial court sustained the objections (*id.* ¶146), and that the trial court made cautionary instructions to the jury (*id.*). Thus, the trial court took curative measures to cure the purported misconduct, such that Plaintiff did not suffer "substantial prejudice."

Moreover, it is well-settled that the decisions of a trial judge who was not misled or coerced constitutes an intervening and superseding cause of harm, breaking the chain of causation for §1983 liability purposes. *See Jovanovic v. City of N.Y.*, No. 04-cv-8437(PAC), 2010 U.S. Dist. LEXIS 144388, at *50-51 (S.D.N.Y. Sept. 28, 2010). The TAC acknowledges that Plaintiff's defense attorney moved for a mistrial because of ADA Smith's purportedly improper statements (TAC ¶¶135, 138, 142, 145), and that the trial court denied the motion. (*Id*. ¶146). The trial court's decision to deny Plaintiff's mistrial motion constitutes an intervening and superseding cause that breaks the chain of causation.

## B. <u>The TAC Fails To Allege An Official Policy or Custom</u>

Assuming, *arguendo*, that the TAC pleads that the WCDA violated Plaintiff's constitutional rights, the TAC nevertheless fails to adequately link that violation to an official policy or custom of the County. A plaintiff may satisfy the "policy or custom" requirement of a *Monell* claim by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing municipal policies related to the particular deprivation in question; (3) a practice so consistent and widespread that it constitutes a "custom or usage" sufficient to impute constructive knowledge of the practice to policymaking officials; or (4) a failure by

> policymakers to train or supervise subordinates to such an extent that it amounts to "deliberate indifference" to the rights of those who come in contact with the municipal employees.

*Atadzhanov v. City of N.Y.*, No. 21-cv-5098(LJL), 2022 U.S. Dist. LEXIS 169083, at *33 (S.D.N.Y. Sept. 19, 2022).

Here, Plaintiff alleges the existence of an official policy or custom by alleging that the County: (i) had a widespread practice of engaging in summation misconduct, suppressing *Brady* material, eliciting and failing to correct false testimony, and directing/authorizing show-up identifications (TAC ¶¶276-284); and (ii) failed to train, supervise and discipline prosecutors to such an extent that it amounts to deliberate indifference (TAC ¶¶285-314).

### 1. <u>The TAC Does Not Plausibly Plead A Widespread Practice</u>

"To demonstrate a *de facto* policy or custom through a widespread practice, a plaintiff must 'show that the policymaker was aware of a subordinate's unconstitutional actions, and consciously chose to ignore them, effectively ratifying the actions.'" *Douglas v. City of Peekskill*, No. 21-cv-10644(KMK), 2023 U.S. Dist. LEXIS 50738, at *23 (S.D.N.Y. 2023), *quoting Buari v. City of N.Y.*, 530 F. Supp. 3d 356, 398 (S.D.N.Y. 2021). "A practice can constitute a custom under *Monell* when the practice is 'persistent and widespread,' or 'permanent and well settled as to constitute a 'custom or usage' with the force of law' and to 'imply the constructive knowledge of policymaking officials.'" *Douglas*, *supra*, at *23, *quoting In re N.Y.C. Policing During Summer 2020 Demonstrations*, 548 F. Supp. 3d 383, 400 (S.D.N.Y. 2021).

Plaintiff alleges the existence of a widespread practice of engaging in the aforementioned prosecutorial misconduct by citing other cases purportedly involving similar allegations of misconduct by the WCDA. Specifically, the TAC cites thirteen cases of summation misconduct (TAC ¶¶277(b)-(k), (m), 279(d), 284(d)), eleven cases of *Brady* violations (*id.* ¶¶278(a)-(f), 279(a),

(b), (d), (e), 284(d)), three cases of eliciting and failing to correct false testimony (*id.* ¶¶284(a), (d), (e)), and three cases involving mistaken identifications (*id.* ¶¶284(a)-(c)). It is well-settled, however, that "[a] plaintiff cannot point to 'contemporaneous or subsequent' violations to 'establish a pattern of violations that would provide notice to the cit[y] and the opportunity to conform to constitutional dictates.'" *Douglas*, *supra*, at *24-25, *citing Connick v. Thompson*, 563 U.S. 51, 63 n.7 (2011). Upon inspection, only five summation cases (TAC ¶¶277(b)-(f)), and two *Brady* cases (TAC ¶¶278(a), (b)), actually preceded Plaintiff's conviction.

A review of the five summation and two *Brady* cases reveals that the violations that occurred therein are not factually similar to the type of violations alleged here, such that it cannot be reasonably inferred that a custom or policy of permitting summation misconduct and *Brady* violations existed at the WCDA. Of the five summation cases, one deemed the error harmless (*see* TAC ¶277(e)), and two are not factually similar to the type of summation misconduct alleged here. Specifically, in *People v. Weis* (TAC ¶277(b)), the ADA improperly referenced statements attributed to the codefendant that implicated the defendant. In *People v. Edwards* (TAC ¶277(d)), the ADA improperly made statements attacking defense counsel. These types of statements were not made here. (*Compare* TAC ¶¶136-144). Of the two *Brady* cases, neither is factually similar to the type of violations alleged here. In *People v. Stanley* (TAC ¶278(a)), the trial court denied the defendant's motion to compel the disclosure of a written statement given to the WCDA by a defense witness. In *Perkins v. Le Fevre* (TAC ¶278(b)), the WCDA had refused the defendant's express request for disclosure of the rap sheet of a defense witness. The *Brady* violations alleged here relate to identification procedures, and thus the nondisclosure of a different type of evidence.

Even after all inferences are drawn in Plaintiff's favor, such a low number of discrete

instances of misconduct, spanning a period of 15 years, is insufficient to plausibly allege that a practice was so widespread as to have the force of law. *Douglas*, *supra*, at *25-27 ("Pleadings articulating only isolated instances of unconstitutional behavior do not plausibly alleged a well-settled custom") (citing cases); *Buari*, 530 F. Supp. 3d at 406; *Miller v. Cnty. of Monroe*, No. 23-cv-06649(FPG), 2024 U.S. Dist. LEXIS 97305 (W.D.N.Y. May 31, 2024).

The TAC does not cite a single case preceding Plaintiff's conviction where the WCDA elicited false testimony or directed/authorized an improper show-up identification. A "single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991).

### 2. **<u>The TAC Does Not Plausibly Plead A Failure To Train</u>**

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61. Failure to train constitutes a policy or custom under §1983 only where "in light of the duties assigned to specific officers or employees[,] the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers…can reasonably be said to have been deliberately indifferent to the need." *Douglas*, *supra*, at *28 (citation omitted). To state a failure to train claim, "plaintiff must plausibly allege a specific deficiency in the municipality's training," *Douglas*, *supra*, at *29 (citation omitted), and "establish that that deficiency caused the constitutional deprivation." *Douglas*, *supra*, at *31 (citation omitted).

"A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train[,]" because "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can

hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Douglas*, *supra*, at *32, *citing Connick*, 563 U.S. at 62. This is particularly true of prosecutors since "[a] district attorney is entitled to rely on prosecutors' professional training and ethical obligations…." *Douglas*, *supra*, at *32, *citing Connick*, 563 U.S. at 67; *D'Alessando v. City of N.Y.*, No. 13-cv-930(SLT), 2016 U.S. Dist. LEXIS 163616, at *33-34 (E.D.N.Y. Nov. 28, 2016).

The TAC alleges that the WCDA exhibited deliberate indifference because the WCDA had no written *Brady* disclosure policy, no formal rules of behavior governing how cases would be prosecuted and when (if ever) discipline for misconduct would be warranted, and no formal disciplinary system for investigating or disciplining prosecutors who violated the rights of criminal defendants. (TAC ¶¶285-286). It is alleged that despite a documented pattern spanning decades, the County failed to implement adequate training, supervision, or disciplinary measures to ensure that assistant district attorneys complied with their constitutional obligations. (TAC ¶313).

As evidence of a pattern of similar constitutional violations, the TAC identifies the thirteen cases of summation misconduct (TAC ¶¶277(b)-(k), (m), 279(d), 284(d)), the eleven cases of *Brady* violations (*id.* ¶¶278(a)-(f), 279(a), (b), (d), (e), 284(d)), the three cases of eliciting and failing to correct false testimony (*id.* ¶¶284(a), (d), (e)), three cases of cross-examination misconduct (*id.* ¶¶277(a), (l), (n)), two cases of trial subpoena misconduct in 1990 (*id.* ¶¶287-293), one case of opening statement misconduct (*id.* ¶279(c)), four cases where convictions were overturned because of DNA evidence (*id.* ¶¶284(a)-(d)), a "report" published by the WCDA in 2007 identifying "Police and Prosecutorial Failures" with respect to DNA evidence as a primary cause for the wrongful conviction of Jeffrey Deskovic in 1990 (*id.* ¶305), the WCDA's prosecution of DWI cases from 2014 to 2021 in which the New York State Police had given Spanish-speaking

suspects mistranslated warnings on the consequences of refusing a blood alcohol test despite knowledge of the tainted evidence (*id.* ¶¶307-310), and the WCDA's acceptance and prosecution of cases presented by MVPD despite knowledge of rampant corruption and misconduct within MVPD (*id.* ¶¶311, 193).

It is well-settled, however, that "[a] plaintiff cannot point to 'contemporaneous or subsequent' violations to 'establish a pattern of violations that…provide[d] notice to the cit[y] [that it needed]…[t]o conform [its training or supervising program] to constitutional dictates." *Douglas*, *supra*, at *34 (alterations in original), *quoting Connick*, 563 U.S. at 63 n.7; *Greene v. City of N.Y.*, 742 F. App'x 532, 536-537 (2d Cir. 2018); *D'Alessandro*, *supra*, at *29. Upon inspection, only five summation (TAC ¶¶277(b)-(f)), two *Brady* (*id.* ¶¶278(a), (b)), and one cross-examination (*id.* ¶277(a)), cases in the examples cited in the TAC preceded Plaintiff's conviction.

Such a small number of instances is insufficient to establish that the WCDA was on notice of its allegedly deficient training or that these deficiencies are the result of deliberate indifference. *Jovanovic*, *supra*, at *49. Moreover, the pre-conviction cases cited by Plaintiff are not similar to the violations at issue here. Namely, the TAC does not allege violations based on cross-examination misconduct, the two *Brady* cases involve nondisclosure of different types of evidence, two of the summation cases involved types of statements that were not made here, and the statement in one of the summation cases was deemed harmless error. (*See* Point I(B)(1) above). Thus, the examples cited by Plaintiff do not constitute a pattern sufficient to allege failure to train, and could not have put WCDA on notice that specific training was necessary. *D'Alessandro*, *supra*, at *28-33; *Douglas*, *supra*, at *34-36 (citing cases); *Connick*, U.S. at 63, 67.

**3. <u>The TAC Does Not Plausibly Plead A Failure To Supervise Or Discipline</u>**

"To establish *Monell* liability premised on a failure to supervise, a plaintiff must plead that

(1) there was a pattern of allegations of or complaints about, or a pattern of actual, similar unconstitutional activity, and (2) the municipality consistently failed to investigate those allegations." *Douglas*, *supra*, at *40, *quoting Lopes v. Westchester Cnty.*, No. 18-cv-8205, 2020 U.S. Dist. LEXIS 54177 (S.D.N.Y. Mar. 25, 2020) (citation omitted). Alternatively, "a plaintiff may plead (1) that there was a pattern of actual similar constitutional violations and (2) the municipality consistently failed to discipline those involved." *Douglas*, *supra*, at *40, *quoting Tieman v. City of Newburgh*, No. 13-cv-4178(KMK), 2015 U.S. Dist. LEXIS 38703 (S.D.N.Y. Mar. 26, 2015). To plead deliberate indifference for a failure to supervise and/or discipline claim, the plaintiff must allege that "the need for more or better supervision to protect against constitutional violations was obvious," which may be established "through proof of repeated complaints of civil rights violations…if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Douglas*, *supra*, at *40, *quoting Buari*, 530 F. Supp. 3d at 400.

The TAC attempts to plead a pattern of actual similar unconstitutional activity by referencing the same examples identified in Point I(B)(2) above. Because these examples post-date Plaintiff's conviction and/or are dissimilar to the unconstitutional activity alleged here (*see* Point I(B)(2) above), the TAC fails to plausibly plead that the County was on notice of other similar constitutional violations by its employees and, in the face of such notice, failed to act. *See Douglas*, *supra*, at *42-43 (citing cases). Plaintiff also alleges that the ADAs were not disciplined for their misconduct. (TAC ¶¶298-301). However, as discussed in Point I(A) above, the TAC fails to plausibly plead that the ADAs violated Plaintiff's constitutional rights, such that discipline was not warranted. Further, while the TAC alleges that the ADAs were promoted after Plaintiff's conviction (TAC ¶¶300-301), a single promotion does not sufficiently allege that a municipality

consistently failed to discipline those involved in unconstitutional acts. *Douglas*, *supra*, at *43-44 (citing cases).

Based on the foregoing, the TAC fails to state a *Monell* claim against the County, and, as such, Count Eight must be dismissed with prejudice.

## POINT II

## THE TAC FAILS TO STATE A *MONELL* CLAIM AGAINST THE COUNTY BASED UPON ACTIONS OF A WCDA POLICYMAKER

The ninth cause of action also seeks to impose *Monell* liability against the County pursuant to 42 U.S.C. §1983. The TAC alleges that at the time of Plaintiff's arrest, WCDA policymakers implemented and maintained an official policy to direct/authorize suggestive identification procedures designed to deprive criminal defendants of their constitutional rights. (TAC ¶¶316, 320). The TAC alleges that ADA O'Brien was such a policymaker because he was the Chief of the WCDA's Mount Vernon office and had been delegated final policymaking authority by the District Attorney concerning: (a) when to authorize show-up identifications in Mount Vernon criminal investigations; (b) the conduct of show-up identification procedures in Mount Vernon criminal investigations; and (c) identification procedures in Mount Vernon criminal investigations and prosecutions in general. (TAC ¶¶34, 317). It is alleged that, upon information and belief, ADA O'Brien had discretion to make decisions on these areas and that his decisions were the final decisions. (*Id.* ¶318). The TAC alleges that ADA O'Brien was exercising his delegated final policymaking authority when he directed/authorized Plaintiff's show-up, and that his "administrative determination" constituted the official policy of the WCDA, directly causing the continuation of Plaintiff's false arrest, malicious prosecution and false imprisonment. (TAC ¶319).

The TAC fails to plausibly allege a claim. First, the WCDA's purported policy was constitutionally reasonable because there is no constitutional right not to be subjected to an unconstitutionally suggestive identification. *See Wray*, 490 F.3d at 193. Indeed, the courts have confirmed that show-up identifications are, by their very nature, "inherently suggestive." *Brisco v. Ercole*, 565 F.3d 80, 88 (2d Cir. 2009). Yet the courts have not prohibited them.

While *Monell* liability can also be established "[w]here a [municipality's] official policy is constitutional, but [it] causes its employees to apply it unconstitutionally, such that the unconstitutional application might itself be considered municipal policy," *Torcivia v. Suffolk Cnty*., 17 F.4th 342, 364 (2d Cir. 2021), *quoting Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 125 (2d Cir. 2004), the TAC does not contain any allegations supporting such theory of liability. For example, the TAC does not cite a single case preceding Plaintiff's conviction where the WCDA directed/authorized an improper show-up identification. (*See* Point I(B)(1) above). Thus, it cannot be said that the County was "aware that its policy may be unconstitutionally applied by inadequately trained employees but…consciously chose not to train them." *Torcivia*, 17 F.4th at 364. Nor does the TAC allege that ADA O'Brien's actual practice of the purported policy was unconstitutional. The TAC does not allege that ADA O'Brien knew that the victim was not in danger of dying.[3] Nor does the TAC allege that ADA O'Brien directed/authorized MVPD officers to conduct the show-up in a suggestive manner. The TAC does not even allege that ADA O'Brien knew the officers had executed the show-up in a suggestive manner. To the contrary, the TAC acknowledges that MVPD withheld the suggestiveness of the show-up from the WCDA. (*See* TAC ¶¶91, 112(c), 113, 115). Thus, at most, the TAC alleges that MVPD officers improperly executed ADA O'Brien's directive/authorization to conduct the show-up. The County cannot be liable for acts of employees of a different municipality.

Second, to impose *Monell* liability on a municipal entity based upon the decisions or acts of a final policymaker, a plaintiff must allege that those decisions or acts caused a constitutional deprivation. *See Torcivia*, 17 F.4th at 363; *Mastromonaco*, 779 F. App'x at 51. As discussed in Point I(A)(1) above, a suggestive show-up identification does not violate a plaintiff's constitutional

[3] The TAC does not contain any allegations detailing what information was known by and/or conveyed to ADA O'Brien before he gave the directive/authorization.

rights until he was convicted on the basis of the suggestive identification. *Hasan*, *supra*, at *n.8, *citing Wray*, 490 F.3d at 193. The TAC acknowledges that the show-up identification here was suppressed by the trial court prior to Plaintiff's criminal trial (TAC ¶125), such that Plaintiff's constitutional right was not violated. *Cerbone*, 508 F. Supp. at 786; *Hasan*, *supra*, at *n.8.

Third, the TAC does not plausibly allege that ADA O'Brien was a final policymaker. "Where a plaintiff seeks to hold a municipality liable for a 'single decision by [a] municipal policymaker[],'…the plaintiff must show that the official had final policymaking power." *Roe*, 542 at 37. "Whether an official has final policymaking authority is a legal question, determined on the basis of state law." *Roe*, 542 F.3d at 37. "[T]he critical inquiry is not whether an official generally has final policymaking authority; rather, the court must specifically determine whether the government official is a final policymaker with respect to the particular conduct challenged in the lawsuit." *Id*.

The case law in the Second Circuit has often determined that ADAs are not policymakers for purposes of municipal liability. *See Conte v. Cnty. of Nassau*, No. 06-cv-4746(JFB)(ETB), 2010 U.S. Dist. LEXIS 104815, at *104-105 (E.D.N.Y. Sept. 30, 2010) (citing cases); *Hudson v. Cnty. of Duchess*, 51 F. Supp. 3d 357, 368-369 (S.D.N.Y. 2014) (citing cases). The cases suggest that "the question of whether an ADA may be considered a policymaker for purposes of a municipal liability claim depends on whether that ADA has supervisory authority." *Conte*, *supra*, at *105-106. Here, although the TAC alleges that ADA O'Brien was Chief of the WCDA's Mount Vernon office (TAC ¶¶34, 317), the TAC does not allege that ADA O'Brien had any policymaking role in the office, supervisory authority or that his act of directing/authorizing the show-up was undertaken in his capacity as a supervisor. The TAC thus fails to plausibly allege that ADA O'Brien was a final policymaker.

Based on the foregoing, the TAC fails to state a *Monell* claim against the County, and, as such, Count Nine must be dismissed with prejudice.

## POINT III

## THE COURT SHOULD NOT EXERCISE SUPPLEMENTAL JURISDICTION

According to the TAC, subject matter jurisdiction over Plaintiff's state law claims is premised upon the supplemental jurisdiction statute, 28 U.S.C. §1367(a). (*See* TAC ¶20). Because the only claims over which the Court has original jurisdiction over the County—*i.e.*, the *Monell* claims—must be dismissed, as set forth in Points I and II above, Plaintiff's state law claims will depend on the Court's discretionary exercise of supplemental jurisdiction. *See* 28 U.S.C. §1367(c)(3) ("district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if...the district court has dismissed all claims over which it has original jurisdiction"). This case, filed seven months ago and only at the motion to dismiss phase, is in its early stages. An Initial Conference has not been scheduled and no discovery has taken place. Thus, even if the TAC plausibly pleads state law claims against the County,[4] there is no reason for the Court to exercise supplemental jurisdiction. *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 81 (2d Cir. 2018) (when "all federal-law claims are eliminated before trial, the balance of factors…will point toward declining to exercise jurisdiction"). As such, this Court should dismiss Counts Twelve, Fourteen and Fifteen.

[4] To be clear, the TAC does not plausibly plead state law claims against the County, as discussed in Points IV–VI, *infra*.

## POINT IV

## THE TAC FAILS TO STATE A CLAIM AGAINST THE COUNTY FOR NEGLIGENT HIRING, TRAINING, RETENTION AND SUPERVISION

The twelfth cause of action alleges that the County, as the employer of ADAs O'Brien and Smith, owed a duty to Plaintiff to exercise reasonable care in the hiring, training, retention, supervision and discipline of its prosecutors. (TAC ¶340). The TAC alleges that the County breached this duty by failing to: (a) adequately train or discipline its ADAs on their *Brady* obligations and the constitutional requirements for fair trial procedures; (b) train or discipline ADAs on the constitutional limits of summation advocacy; (c) supervise or discipline ADAs who engaged in the pattern of summation misconduct, *Brady* violations and presentation of false testimony; and (d) implement the reforms recommended by the 2007 Deskovic report identifying systemic prosecutorial failures. (TAC ¶342). It is alleged that the County's negligence proximately caused the constitutional violations committed against Plaintiff, and that had the County exercised reasonable care, the misconduct that led to Plaintiff's wrongful conviction would have been prevented. (TAC ¶343).

Plaintiff's claim is time-barred. "[A] tort action against a city or its employees acting in the scope of their employment must be commenced within one year and ninety days 'after the happening of the event upon which the claim is based.'" *Furet v. City of N.Y.*, No. 22-cv-03172(MMG), 2025 U.S. Dist. LEXIS 172347, at *16 (S.D.N.Y. Sep. 4, 2025). This includes claims for negligent hiring, supervision, and training. *Id.* "Because causes of action based on negligent hiring, training and supervision accrue on the date of the event on which the claim is based, this cause of action…began to accrue on the date of the plaintiff's arrest." *Robertson v. Fluerinord*, No. 23-cv-4977(JGK), 2024 U.S. Dist. LEXIS 204313, at *11 (S.D.N.Y. Nov. 8, 2024), *citing Murray v. City of N.Y.*, 283 A.D.2d 560, 561 (2d Dept. 2001); *see also Furet*, *supra*,

at *16.

In *Murray*, the Second Department rejected plaintiff's contention that the statute of limitations ran from the date of his acquittal, holding that "[a]lthough the continuation of the criminal action delayed accrual of any possible claim alleging malicious prosecution, it did not delay accrual of the second cause of action to recover damages, *inter alia,* for negligent hiring, training, and retention." 283 A.D.2d at 561. The Second Department further ruled that plaintiff's claim was "related to [his] arrest, and resolution of the criminal action did not affect the factual basis for the second…cause[] of action." *Id*. Here, Plaintiff alleges that he was arrested in 1981. (TAC ¶¶93, 253). Thus, Plaintiff's claim is time-barred.

This claim also fails because "New York law does not permit a claim for negligent hiring, training, retention or supervision where the defendants act in the scope of their employment." *Magassouba v. City of N.Y.*, No. 23-cv-3686(KMK), 2024 U.S. Dist. LEXIS 105588, at *11 (S.D.N.Y. June 12, 2024), *quoting Schoolcraft v. City of N.Y.*, 103 F. Supp. 3d 465, 521 (S.D.N.Y. 2015); *Velez v. City of N.Y.*, 730 F.3d 128, 136-137 (2d Cir. 2013) ("a plaintiff must show that the employee acted 'outside the scope of her employment'"). Here, the TAC admits that "[a]t all times relevant to this Complaint, the assistant district attorneys who prosecuted Mr. Koonce acted as employees and agents of the County of Westchester, in furtherance of the business, including prosecutorial functions, of the County of Westchester, and within the scope of their employment." (TAC ¶354).

Finally, this claim fails because the TAC does not allege that ADAs O'Brien and Smith engaged in conduct that harmed Plaintiff, for the reasons set forth in Points I(A) and II above. Nor does the TAC allege that the County knew or should have known that ADAs O'Brien and Smith had a propensity for engaging in the alleged prosecutorial conduct. The is not only devoid of

allegations that ADAs O'Brien and Smith had engaged in any prosecutorial misconduct prior to Plaintiff's conviction, but fails to plead allegations establishing that the County was on notice that any ADAs were engaging in misconduct, for the reasons set forth in Points I(B)(2), (3) above. Moreover, Plaintiff's attempt to premise this claim on conduct that occurred after Plaintiff's conviction, to wit: the failure to implement reforms recommended by the 2007 Deskovic report (TAC ¶342(d)), is improper.

Based on the foregoing, the TAC fails to state a claim against the County for negligent hiring, training, retention and supervision, and, as such, Count Twelve must be dismissed with prejudice.

## POINT V

## THE TAC FAILS TO STATE A CLAIM AGAINST THE COUNTY FOR VIOLATING NEW YORK STATE CONSTITUTIONAL DUE PROCESS

The fifteenth cause of action, sounding in violation of New York State Constitutional Due Process,[5] alleges that the County is "liable under *respondeat superior* for the state constitutional violations committed by [its] respective employees acting within the scope of their employment." (TAC ¶360). In connection therewith, Plaintiff alleges that "[ADA] O'Brien…acting within the scope of [his] employment, deprived Mr. Koonce of his right to due process under the New York State Constitution by fabricating evidence, suppressing material exculpatory and impeachment evidence, conducting impermissibly suggestive identification procedures, and initiating and continuing a criminal prosecution without probable cause, as more fully set forth in the preceding paragraphs." (TAC ¶359).

This claim must be dismissed. As an initial matter, the TAC does not allege "in the preceding paragraphs" that ADA O'Brien fabricated evidence, suppressed material exculpatory and impeachment evidence, conducted impermissibly suggestive identification procedures or initiated and continued a criminal prosecution without probable cause. Instead, the TAC alleges only that ADA O'Brien improperly directed/authorized MVPD officers to conduct a show-up identification despite the absence of exigent circumstances. Because directing/authorizing the show-up identification was not improper and evidence of the show-up identification was not introduced at Plaintiff's criminal trial, as discussed in Points I(A)(1) and II above, Plaintiff fails to plausibly plead that ADA O'Brien's directive/authorization violated his New York State constitutional due process rights. Moreover, while state constitutional due process claims will

5 New York State Constitution, Article I, §6, provides that "No person shall be deprived of life, liberty or property without due process of law." (TAC ¶358).

survive if they seek to hold a municipality liable under the doctrine of *respondeat superior*, *see Brown v. State of N.Y.*, 89 N.Y.2d 172, 192 (1996), there is no separate right of action under the New York State Constitution where state common law provides an alternative means of redress. *See Newton v. City of N.Y.*, 566 F. Supp. 2d 256, 282 (S.D.N.Y. 2008).

Based on the foregoing, the TAC fails to state a claim against the County for violation of New York State Constitutional Due Process, and, as such, Count Fifteen must be dismissed with prejudice.

## POINT VI

## PLAINTIFF'S CLAIM FOR *RESPONDEAT SUPERIOR* FAILS

The fourteenth cause of action alleges that ADAs O'Brien and Smith acted as employees/agents of the County, in furtherance of the business, including prosecutorial functions, of the County and within the scope of their employment. (TAC ¶¶354-355). The TAC then alleges that "[u]nder the doctrine of *respondeat superior*,…the County of Westchester [is] liable for [its] agents' state law torts of malicious prosecution, negligent hiring, training, retention, and supervision, intentional, reckless, or negligent infliction of emotional distress, negligence, and violation of the New York State Constitution." (TAC ¶356).

The TAC fails to state a claim against the County. As an initial matter, "[i]t is well-established…that *respondeat superior* 'is not a cause of action at all, but a theory of liability that must attach to a separate claim.'" *Lederman v. Benepe*, No. 12-cv-6028(PGG), 2016 U.S. Dist. LEXIS 197311, at *13 (S.D.N.Y. Mar. 11, 2016). Accordingly, the Court must address *respondeat superior* liability in tandem with the underlying cause(s) of action for which it is asserted. *See Rindgen v. Cnty. of Broome*, No. 24-cv-1325(AJB)(ML), 2025 U.S. Dist. LEXIS 233580, at *19 (N.D.N.Y. Dec. 1, 2025).

Despite alleging that the County is "liable for [its] agents' state law torts" (TAC ¶356), the TAC does not actually assert, let alone plead anywhere within its contents the elements of, state law claims against ADAs O'Brien or Smith for malicious prosecution, or intentional, reckless or negligent infliction of emotional distress, or negligence. Plaintiff's claim for malicious prosecution is only asserted against Mount Vernon employees/agents. (*See* TAC at Count Thirteen). Plaintiff's claim for intentional, reckless or negligent infliction of emotional distress, which had been asserted against only Mount Vernon employees/agents in the Original, First Amended and Second

Amended Complaints (*see* ECF Docs. 13, 18, 35), was removed from the TAC. The TAC similarly fails to assert a negligence claim. Even if it did, it is well-settled that "as a matter of public policy, New York does not recognize negligence claims predicated on a criminal prosecution." *See McCray v. City of N.Y.*, No. 03-cv-9685(DAB), 2007 U.S. Dist. LEXIS 90875, at *102 (S.D.N.Y. Dec. 11, 2007); *Jenkins v. City of New York*, No. 91-cv-3639, 1992 U.S. Dist. LEXIS 8279, at *23-24 (S.D.N.Y. June 15, 1992). In any event, the TAC does not allege facts in support of a negligence claim that are distinct from the facts alleged in support of Plaintiff's constitutional law claims.

The TAC also fails to plausibly allege that ADAs O'Brien and Smith engaged in any misconduct giving rise to claims for negligent hiring, training, retention and supervision and violation of the New York State Constitution, for the reasons set forth in Points IV and V above, such that the County cannot be liable for same. Even assuming, *arguendo*, that the ADAs did engage in such misconduct, they are entitled to absolute immunity for same. A finding that "no constitutional deprivation occurred as a result of a finding of absolute immunity…alone merits dismissal of a claim against Westchester County." *Burton v. Cnty. of Westchester*, No. 21-cv-1475(KMK), 2022 U.S. Dist. LEXIS 115402, at *21-22 (S.D.N.Y. June 29, 2022).

Based on the foregoing, the TAC fails to state a claim against the County for *respondeat superior*, and, as such, Count Fourteen must be dismissed with prejudice.

## CONCLUSION

**WHEREFORE**, in view of the foregoing, Defendant County of Westchester respectfully requests that the Court grant its motion for an Order, pursuant to Fed. R. Civ. P. 12(b)(6), dismissing with prejudice the Third Amended Complaint, together with such other and further relief as the court deems just and proper.

Dated: White Plains, New York
September 25, 2026

TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP

By: *J. Patrick Carley, III*

J. Patrick Carley, III, Esq.
445 Hamilton Avenue, Suite 900
White Plains, New York 10601
Telephone: (914) 347-2600
Email: pcarley@tlsslaw.com
*Attorneys for Defendant County of Westchester*

**WORD COUNT CERTIFICATION**

I, J. Patrick Carley, III, an attorney admitted to practice before the United States District Court for the Southern District of New York, certifies, in accordance with and pursuant to Local Civil Rule 7.1 of the United States District Courts for the Southern and Eastern Districts of New York, and Individual Practice and Rule II(B) of the Hon. Kenenth M. Karas, U.S.D.J., that the foregoing Memorandum of Law of Defendant County of Westchester in Support of Motion to Dismiss the Third Amended Complaint contains 8,732 words, exclusive of the caption, table of contents, table of authorities and signature block, and the certification as to the foregoing relies upon the word count feature of the word-processing system used to prepare the document, Microsoft Word.

Dated: White Plains, New York
September 25, 2026

TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP

By: *J. Patrick Carley, III*
J. Patrick Carley, III, Esq.
445 Hamilton Avenue, Suite 900
White Plains, New York 10601
Telephone: (914) 347-2600
Email: pcarley@tlsslaw.com
*Attorneys for Defendant County of Westchester*