TRAUB LIEBERMAN
445 Hamilton Avenue | Suite 900 | White Plains, New York 10601
DIRECT (914) 586-7049 | MAIN (914) 347-2600 | FAX (914) 347-8898

J. Patrick Carley, III | Partner | pcarley@tlsslaw.com

September 25, 2026

**VIA ECF**
Honorable Kenneth M. Karas
United States District Court
300 Quarropas Street
White Plains, New York 10601

Re: ***Jeffrey Koonce v. City of Mount Vernon, et al.* // Case No. 7:26-cv-02310(KMK)**

Dear Judge Karas:

This firm represents Christopher J. O'Brien as Executor of the Estate of James H. O'Brien ("the Estate") in this action. We write pursuant to Individual Rule II(A), to request a pre-motion conference regarding the Estate's anticipated motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the Third Amended Complaint ("TAC") (ECF Doc. 49).

This action arises out of Plaintiff's arrest, prosecution, conviction and imprisonment for an armed robbery and shooting that occurred in June 1981. Decades later, in 2024, following a reinvestigation by the Conviction Review Unit of the Westchester County District Attorney ("WCDA"), Plaintiff moved to vacate his conviction, with WCDA's consent, which the New York State Supreme Court (James A. McCarty, J.) granted. Critically, Judge McCarty rejected every argument that newly discovered evidence established that Mount Vernon and WCDA engaged in misconduct, and instead vacated the conviction on other grounds. (ECF Doc. 39-1). Nevertheless, Plaintiff commenced this civil rights action asserting, *inter alia*, one claim against the Estate.

The TAC alleges that after MVPD first arrested Plaintiff, the Estate's decedent, Assistant District Attorney James O'Brien, while acting under color of state law, directed/authorized MVPD officers to bring Plaintiff to the hospital where the victim was recuperating to conduct a one-on-one show-up identification. (TAC ¶¶363, 86, 299). The TAC alleges that the show-up was conducted despite the absence of exigent circumstances and the availability of other witnesses to participate in proper identification procedures, contrary to then-settled law. (TAC ¶¶86, 90, 299). It is alleged that at the time of the show-up, ADA O'Brien was acting in an investigative capacity (TAC ¶¶363, 364), and that probable cause to arrest Plaintiff did not exist. (TAC ¶363). Plaintiff alleges that the Estate is liable under 42 U.S.C. §1983 for violating his rights under the Fourth, Fifth, Sixth and Fourteenth Amendments. (TAC ¶¶362-367). For the following reasons, the Estate requests permission to seek dismissal of the TAC.

First, ADA O'Brien is entitled to absolute immunity. "[P]rosecutors enjoy 'absolute immunity from §1983 liability for those prosecutorial activities intimately associated with the judicial phase of the criminal process.'" *Anilao v. Spota*, 27 F.4th 855, 864 (2d Cir. 2022). The TAC acknowledges that Plaintiff had already been arrested by MVPD—based upon the victim's identification of Plaintiff from a photo array—when ADA O'Brien directed/authorized the show-up. (TAC ¶299; *see also id.* ¶¶72-76, 79, 82-86). ADA O'Brien was thus cloaked with absolute

immunity. *See*, *e.g.*, *Bermudez v. City of N.Y.*, 2013 U.S. Dist. LEXIS 20371, at *17 (S.D.N.Y. Feb. 14, 2013) (ADA not functioning as an investigator and thus entitled to absolute immunity for unconstitutional identification procedures related to a tainted line-up "[b]ecause Plaintiff had already been arrested by the time [ADA] Rodriguez arrived at the police station"), *citing Hill v. City of N.Y.*, 45 F.3d 653, 662 (2d Cir. 1995); *see also Tabor v. N.Y.C.*, 2012 U.S. Dist. LEXIS 29004 (E.D.N.Y. Feb. 23, 2012) (ADA entitled to absolute immunity for pre-indictment, pre-arraignment interview, where plaintiff had been arrested based on the statement of the complaining witness).

Second, the TAC fails to plausibly state a claim against the Estate. To maintain a claim under 42 U.S.C. §1983, "the conduct complained of must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994). It is well-settled that there is no constitutional right not to be subjected to an unconstitutionally suggestive identification. *Wray v. City of N.Y.*, 490 F.3d 189, 193 (2d Cir. 2007), *citing Wray v. City of N.Y.*, 340 F. Supp. 2d 291, 302 (E.D.N.Y. 2004). It is also well-settled that "[t]he mere failure of a 'show-up' to pass constitutional requirements, without a showing of resulting prejudice, does not establish a constitutional deprivation." *Cerbone v. Cnty. of Westchester*, 508 F. Supp. 780, 786 (S.D.N.Y. 1981). "If the identification procedures were unfairly suggestive, plaintiff's constitutional rights would not have been violated until he was convicted on the basis of the suggestive identifications." *Hasan v. Onondaga Cnty.*, 2018 U.S. Dist. LEXIS 131727, at n.8 (N.D.N.Y. Aug. 2, 2018), *citing Wray*, 490 F.3d at 193. The TAC confirms that the show-up identification was suppressed by the trial court before Plaintiff's trial. (TAC ¶¶125, 365). Thus, the mere act of directing/authorizing MVPD officers to conduct the show-up did not violate Plaintiff's constitutional rights. *See Cerbone*, 508 F. Supp. at 786 ("The preclusive effect of the County Court's pretrial rulings thus also requires dismissing Cerbone's §1983 claims").

The TAC attempts to rescue his claim by alleging that "[a]lthough the showup identification was suppressed before trial, the suggestion it introduced rendered unreliable the in-court identification that the prosecution used to convict Mr. Koonce, and the trial court's 'independent source' ruling permitting that in-court identification was procured through Defendants' false testimony and their suppression of the true circumstances of the identification procedures." (TAC ¶365; *see also* TAC ¶¶125-128). The assertion that the show-up tainted the victim's in-court identification, is conclusory and speculative. Indeed, Judge McCarty has already determined that the in-court identification was tainted, if anything, by the victim's observation of Plaintiff in the confines of his hospital room during the felony hearing. (ECF Doc. 39-1 p.3). The assertion that the show-up somehow influenced the trial court to permit the in-court identification, is not only conclusory and speculative, but belied by the documentary evidence. The trial court specifically noted in its Decision dated February 16, 1983 that the victim's identification of Plaintiff in a photo array and testimony that he observed Plaintiff during the incident established the "independent source" for an in-court identification. The show-up thus played no role in the trial court's decision.

The trial court's decision to permit the in-court identification also constitutes an independent intervening and superseding cause of harm. "The acts of other participants in the legal system that are taken subsequent to the suggestive showing may in turn break the chain of causation flowing from that misconduct." *King-Knight v. City of N.Y.*, 2025 U.S. Dist. LEXIS 59143 (S.D.N.Y. 2025), *citing Wray*, 490 F.3d at 193-194; *Delamota v. City of N.Y.*, 683 Fed. Appx. 65, 67 (2d Cir. 2017). As in *Delamota*, "[h]ere, there is a clear and independent intervening actor—the trial court—that admitted the identification evidence." 683 Fed. Appx. at 67. This is particularly true given the failure

to plausibly allege that the ADAs misled or pressured the trial court into allowing an in-court identification. *See Hasan*, *supra*, at *n.8, *citing Wray*, 490 F.3d at 193. To be sure, the TAC does not allege that ADA O'Brien had any further involvement in Plaintiff's prosecution after directing/authorizing the show-up.[1] Moreover, while the TAC alleges that the show-up was inherently suggestive,[2] the TAC confirms that the trial court was in fact already aware of "the circumstances" that made the show-up suggestive when it ruled to allow an in-court identification. Specifically, the trial court knew—because the victim had testified at the pretrial *Wade* hearing—"that Defendants Garcia and Salottolo had improperly primed [the victim] to identify Mr. Koonce." (TAC ¶125). The trial court also knew that Plaintiff was handcuffed and the only person presented during the show-up, because that information was in Plaintiff' direct knowledge. Thus, the trial court's ruling to permit an in-court identification, made with full knowledge of "the circumstances" of the show-up and over Plaintiff's objection, is an intervening and superseding act. *See King-Knight*, *supra*, at *42-43 (the independent decision of the hearing judge to permit the in-court identification was a superseding act that broke the chain of causation); *Perkins v. N.Y.C*, 2019 U.S. Dist. LEXIS 167217 (E.D.N.Y. 2019); *Wray*, 490 F.3d at 192-193.

Third, even if ADA O'Brien's directive/authorization to MVPD to conduct the show-up was investigative, he is entitled to qualified immunity because there was no clearly established law that such a directive/authorization was unconstitutional. Qualified immunity shields government officials from civil liability resulting from the performance of their discretionary functions "if either (a) the Defendant's conduct did not violate clearly established law, or (b) it was objectively reasonable for the Defendant to believe that his action did not violate such law." *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 250 (2d Cir. 2001). To determine whether qualified immunity applies, courts consider "whether the facts shown make out a violation of a constitutional right and whether the right at issue was clearly established at the time of the defendant's alleged misconduct." *Tankleff v. Cnty. of Suffolk*, 2017 U.S. Dist. LEXIS 97472 (E.D.N.Y. June 23, 2017).

Here, ADA O'Brien's conduct did not violate a clearly established law, or at the very least it was objectively reasonable for ADA O'Brien to believe that his conduct did not violate such a law, since there is no constitutional right not to be subjected to a show-up identification. *See Wray*, 490 F.3d at 193; *Cerbone*, *supra*. Critically, the TAC does not allege that ADA O'Brien knew that the victim was not in danger of dying when he directed/authorized the show-up. Nor does the TAC allege that ADA O'Brien directed/authorized MVPD officers to conduct the show-up in a suggestive manner. The TAC does not even allege that ADA O'Brien knew the officers had executed the show-up in a suggestive manner. To the contrary, the TAC acknowledges that MVPD withheld the suggestiveness of the show-up from the WCDA. (*See* TAC ¶¶91, 112(c), 113, 115). Moreover, the TAC admits that Plaintiff had been identified in a photo array and arrested before ADA O'Brien gave the directive/authorization, such that probable cause, or at least arguable probable cause, for Plaintiff's arrest existed. It was therefore objectively reasonable for ADA O'Brien to conclude that his action did not violate law. *McLean v. Cnty. of Westchester*, 2018 U.S. Dist. LEXIS 204269, at *22-23 (S.D.N.Y. Dec. 3, 2018).

---

[1] The "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994).

[2] The TAC alleges the show-up was inherently suggestive because: (i) MVPD told the victim beforehand that he was about to see the person he had identified from the photo array (TAC ¶87); (ii) Plaintiff was presented to the victim while handcuffed (*id.* ¶88); and (iii) Plaintiff was the only person presented to the victim (TAC ¶¶87-89).

In light of the foregoing, the Estate respectfully requests that the Court schedule a pre-motion conference. We thank the Court for its consideration.

Respectfully Submitted,

TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP

*J. Patrick Carley, III*

J. Patrick Carley, III

cc: All Counsel of Record