UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

JEFFREY KOONCE,

Plaintiff, Case No. 26-cv-02310

-against-

CITY OF MOUNT VERNON; COUNTY OF WESTCHESTER; Detective JAMES GARCIA; Detective Lieutenant ROBERT ASTORINO; Detective DANIEL SALOTTOLO; JOHN DOES 1–10; JOHN DOE 11, as Administrator of the Estate of ANTHONY M. MOSCA; JOHN DOE 12, as supervising officer of the MVPD detective unit; and CHRISTOPHER J. O'BRIEN as Executor of the Estate of JAMES H. O'BRIEN;

Defendants.

------------------------------------------------------------------X

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Barry McTiernan & Moore LLC
Attorneys for Defendants
City of Mount Vernon, Detective James Garcia,
Detective Lieutenant Robert Astorino, and
Detective Daniel Salottolo
One Battery Park Plaza, 35th Floor
New York, New York 10004

# Table of Contents

**PRELIMINARY STATEMENT** .......... 1

**STATEMENT OF FACTS** .......... 1

**ARGUMENT** .......... 8

**STANDARD OF REVIEW** .......... 8

**ALL BUT ONE OF PLAINTIFF'S CLAIMS AGAINST THE MOUNT VERNON DEFENDANTS ARE TIME-BARRED** .......... 9

**IN THE ALTERNATIVE, PLAINTIFF FAILS TO STATE A VALID CLAIM AGAINST THE MOUNT VERNON DEFENDANTS** .......... 11

**1. Plaintiff fails to adequately plead the personal involvement of Defendant Astorino** .......... 11

**2. Plaintiff fails to adequately plead an unconstitutional policy or practice pursuant to which his rights were violated** .......... 12

**3. Plaintiff fails to adequately plead a Brady claim** .......... 15

**4. Plaintiff fails to state a claim for negligent hiring, training, retention, and supervision** .......... 16

**5. Alternatively, Mount Vernon cannot be held liable for alleged intentional torts under a theory of respondeat superior** .......... 18

**CONCLUSION** .......... 19

**Cases**

Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) ... 13
Alexander v. Westbury Union Free Sch. Dist., 829 F. Supp. 2d 89 (E.D.N.Y. 2011) ... 19
Amnesty Am. v. Town of W. Hartford, 361 F.3d 113 (2d Cir. 2004) ... 15
Ashcroft v. Iqbal, 556 U.S. 662 (2009) ... 8
Back v. Hastings-on-Hudson Union Free School District, 365 F.3d 107 (2d Cir. 2004) ... 11
Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ... 8
Blyden v. Mancusi, 186 F.3d 252 (2d Cir. 1999) ... 11
Buari v. City of New York, 530 F. Supp. 3d 356 (S.D.N.Y. 2021) ... 13
Chodos v. FBI, 559 F. Supp. 69 (S.D.N.Y. 1982) ... 9
Connick v. Thompson, 563 U.S. 51 (2011) ... 14
DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104 (2d Cir. 2010) ... 8
Doe v. Yeshiva of Brooklyn, 247 A.D.3d 1147 (2d Dept. 2026) ... 17
Douglas v. City of Peekskill, 2023 WL 2632217 (S.D.N.Y. 2023) ... 14
Gallagher v. Directors Guild of America, Inc., 144 A.D.2d 261 (1st Dept. 1988) ... 10
Ghartey v. St. John's Queens Hosp., 869 F.2d 160 (2d Circ. 1989) ... 9
Harley v. City of New York, 36 F.Supp.2d 136 (S.D.N.Y. 1999) ... 12
Judith M. v. Sisters of Charity Hosp., 93 N.Y.2d 932 (1999) ... 18
Kane v. Mount Pleasant Cent. Sch. Dist., 80 F.4th 101 (2d Cir. 2023) ... 9
Kenneth R. v. Roman Catholic Diocese, 654 N.Y.S.2d 791 (2d Dept. 1997) ... 17
Mataxas v. North Shore Univ. Hosp., 211 A.D.2d 762 (2d Dept. 1995) ... 18
Matican v. City of New York, 524 F.3d 151 (2d Cir. 2008) ... 11
McCray v. City of New York, 2007 WL 4352748 (S.D.N.Y. 2007) ... 16
McKie v. LaGuardia Community College/CUNY, 85 A.D.3d 453 (1st Dept. 2011) ... 11
Monell v. Department of Social Serv., 436 U.S. 658 (1978) ... passim
Pinaud v. County of Suffolk, 52 F.3d 1139 (2d Cir. 1995) ... 10
Reed v. Goertz, 598 U.S. 230 (2023) ... 9
Reynolds v. Giuliani, 506 F.3d 183 (2d Cir. 2007) ... 13
Sorlucco v. New York City Police Dep't, 971 F.2d 864 (2d Cir. 1992) ... 13
Strickler v. Greene, 527 U.S. 263 (1999) ... 15
Tenenbaum v. Williams, 193 F.3d 581 (2d Cir. 1999) ... 13
Vann v. City of New York, 72 F.3d 1040 (2d Cir. 1995) ... 13
Watt v. City of New York, 740 F. Supp. 3d 212 (E.D.N.Y. 2024) ... 10
Wienclaw v. East Islip Union Free Sch. Dist., 192 A.D.3d 945 (2d Dept. 2021) ... 17
Wright v. Smith, 21 F.3d 496 (2d Cir. 1994) ... 11
Zachary v. City of Newburgh, 2014 WL 1508705 (S.D.N.Y. 2014) ... 14

**Statutes**

CPLR § 214 .......... 9
CPLR § 217-a .......... 11
Gen. Mun. Law § 50-i .......... 11
42 U.S.C. § 1983 .......... passim

**Rules**

Fed. R. Civ. P. 8 .......... 9

## PRELIMINARY STATEMENT

Defendants City of Mount Vernon ("Mount Vernon"), Detective James Garcia ("Garcia"), Detective Lieutenant Robert Astorino ("Astorino"), and Detective Daniel Salottolo ("Salottolo") (collectively, "Mount Vernon Defendants") submit this memorandum of law in support of their pre-answer motion to dismiss Plaintiff Jeffrey Koonce's Third Amended Complaint ("TAC") in its entirety pursuant to Fed. R. Civ. P. 12(b)(6). With the exception of one claim, Plaintiff's claims against the Mount Vernon Defendants are time-barred. In the alternative, Plaintiff has failed to state a claim against the Mount Vernon Defendants.

## STATEMENT OF FACTS

The TAC contains the following factual allegations against the Mount Vernon Defendants, which the Mount Vernon Defendants accept as true for purposes of this motion. In June 1981, there was an armed robbery of the Vernon Stars Rod & Gun Club located in Mount Vernon ("Vernon Stars robbery"), during which a teenager named Charles Shuler ("Shuler") was shot and injured. Ex. A, ¶¶ 42-43. Plaintiff Jeffrey Koonce maintains his innocence and lack of involvement in the robbery. Id., ¶¶ 48-52. Plaintiff alleges that, rather than perform an unbiased investigation into the robbery, Garcia and Salottolo quickly and without reason zeroed in on the Bronx as the likely location of the robbery's perpetrators. Id., ¶¶ 53-57.

The two detectives eventually came to regard Plaintiff as a potential suspect for unknown reasons and obtained a photograph of him from the New York City Police Department. Salottolo and Garcia used that photograph in a photographic array, filling the rest of the array with individuals selected for their prior robbery convictions rather than their physical resemblance to Plaintiff. Id., ¶¶ 65-67. It is further alleged that they manipulated Plaintiff's photograph so that it was larger and darker than the other photographs in the array. Id., ¶¶ 61-63. Astorino "in

accordance with MVPD policy, practice, and local custom, directly oversaw, had knowledge of, and approved his subordinates Salottolo's and Garcia's creation of this suggestive photo array" despite knowing that state and federal law prohibited the use of such suggestive identification procedures. Id., ¶ 64.

Despite having no real reason to suspect Plaintiff of the robbery, Garcia and Salottolo presented the photographic array to Shuler while he was recovering in the hospital. Id., ¶¶ 70-72. Shuler was only shown four of the six photographs in the array and he was given impermissibly suggestive pre-identification instructions that he should identify the shooter from the array; he eventually selected Plaintiff's photograph. Id., ¶¶ 74-76. Other eyewitnesses to the robbery failed to identify Plaintiff as one of the perpetrators. Id., ¶ 77.

Based entirely on Shuler's identification, Garcia and Salottolo arrested Plaintiff for the robbery despite an alleged lack of probable cause to do so. Id., ¶¶ 82-83. With authorization from Westchester County Assistant District Attorney James H. O'Brien, Salottolo and Garcia brought a handcuffed Plaintiff to the hospital where Shuler was recovering to conduct an unduly suggestive one-on-one show-up procedure. Id., ¶¶ 86, 88. The detectives told Shuler prior to presenting Plaintiff to him that the person he was about to see was the person he had previously identified from the photographic lineup to ensure that Shuler would again identify Plaintiff as a perpetrator. Id., ¶ 87. Shuler identified Plaintiff again. Id., ¶ 91.

Following Shuler's second identification of Plaintiff, it is alleged that Garcia falsified a search warrant application for a blue tote bag with white handles that he falsely represented was observed at Plaintiff's home when Plaintiff was arrested. Id., ¶¶ 93-95. Astorino reviewed the search warrant application, allegedly knew it was falsified due to his "earlier participation in creating the suggestive photo array and his knowledge of the investigation and lack of evidence

incriminating Mr. Koonce" but nonetheless approved and/or failed to stop Garcia from submitting the application. Id., ¶ 96. Garcia subsequently executed the search warrant, at which time he falsely claimed to have recovered the tote bag in question from Plaintiff's residence. Id., ¶ 97.

Around the same time, Plaintiff's girlfriend complained to police that the apartment she shared with Plaintiff had been broken into and various items stolen by a man named Ronald Deighan. Id., ¶ 98. Deighan was arrested shortly thereafter for the burglary of Plaintiff's apartment and interviewed by Garcia and Salottolo. During that interview, Deighan implicated Plaintiff and Plaintiff's younger brother in the Vernon Stars robbery. Id., ¶ 102. His statement to this effect allegedly contained both objectively false information and non-public facts about the Vernon Stars robbery that Garcia and Salottolo fed to Deighan to include in his statement, which was entirely false. Id., ¶ 103. Deighan was induced by Garcia and Salottolo to give the false statement because the detectives allegedly promised him that he would be released from custody and not prosecuted as long as he incriminated Plaintiff. Id., ¶ 104.

The individual Mount Vernon Defendants "independently or collectively" forwarded the misleading criminal investigation documentation to the Westchester County District Attorney's office and met with prosecutors to confirm the information therein in an effort to convince the office to prosecute Plaintiff for the Vernon Stars robbery. Id., ¶¶ 109-111. In doing so, it is alleged that the individual Mount Vernon Defendants failed to inform the DA's office of (1) the misconduct in compiling the photographic array; (2) the true circumstances concerning Shuler's two identifications of Plaintiff; (3) the falsity of Garcia's search warrant application and inventory; and (4) the falsity of Deighan's statement implicating Plaintiff in the Vernon Stars robbery. Id., ¶ 112. As a result, the DA's office decided to prosecute Plaintiff, and the individual Mount Vernon

Defendants forwarded a false felony complaint report alleging Plaintiff was a perpetrator of the Vernon Stars robbery to the office. Id., ¶¶ 116-117.

During a subsequent felony hearing in Shuler's hospital room, Shuler again identified Plaintiff. Id., ¶ 118. The individual Mount Vernon Defendants then held an in-person lineup featuring Plaintiff's brother, who was also accused of being involved in the Vernon Stars robbery. During that lineup, the witness did not identify anyone. It was only after defense counsel left that the witness advised Astorino that Plaintiff's brother was one of the perpetrators, allegedly doing so as a result of Astorino's coercion. Id., ¶ 119.

Plaintiff was ultimately indicted by a grand jury who he alleges was not advised of any of the individual Mount Vernon Defendants' previously discussed wrongdoing. Id., ¶¶ 120-122. Plaintiff was remanded without bail due to the felony complaint. Id., ¶ 124. At trial, the Court suppressed the identification that resulted from the show-up procedure that took place at the hospital after Plaintiff's arrest on the ground that it was unduly suggestive. The Court also ruled that Shuler had an independent source for a future in-court identification, allegedly because it was unaware of Garcia and Salottolo's misconduct in securing the photographic identification of Plaintiff. Id., ¶ 125. Shuler later positively identified Plaintiff in-court as his shooter. Id., ¶ 128.

Salottolo is alleged to have provided materially false testimony at trial, including that (1) the Mount Vernon Police Department received information implicating Plaintiff in the Vernon Stars robbery before the photographic identification; (2) Plaintiff was provided with Miranda warnings at the time of his arrest; (3) the photographic array was composed by selecting filler photographs of individuals who physically resembled Plaintiff; (4) the blue tote bag was recovered from Plaintiff's apartment; and (5) Plaintiff's alibi was investigated and determined to not be

believable[1]. The individual Mount Vernon Defendants allegedly suppressed all of this information and Plaintiff was convicted as a result. Id., ¶¶ 129-130.

Plaintiff was convicted after a jury trial. He served roughly eight years in prison before being released in 1992. Id., ¶ 147. After his release, he remained on parole for a further three years. Id.

In 2024, the Westchester County District Attorney's Conviction Review Unit began investigating Plaintiff's case. Id., ¶ 155. According to the TAC, the District Attorney found that Salottolo provided misleading or false testimony at trial regarding the photographic array, expressed concerns about Garcia's credibility, and affirmed that Astorino was "'implicated in official misconduct germane to the wrongdoing alleged' in this case." Id., ¶¶ 166-168. The TAC emphasizes that Astorino pleaded guilty to unrelated federal corruption offenses stemming from his theft of money during a sting operation in 1996, four years after Plaintiff was released from prison. Id., ¶¶ 162, 169.

At the end of 2024, Plaintiff moved with the District Attorney's consent to vacate his conviction and dismiss the indictment. Id., ¶ 165. That motion was granted in December 2024 by Judge James A. McCarty. Ex. B. The decision states that Plaintiff's conviction was essentially based entirely on Shuler's in-court positive identification and notes that "[i]n the thirty-plus years that have elapsed since [Plaintiff] was tried, significant social science research has brought concerns about the reliability of eyewitness identifications to the forefront." Id., p. 1. The decision also noted subsequent material changes to the model criminal jury instructions related to eyewitness identification. Id. It went on to make clear that the Court was not implying that Shuler

[1] The TAC acknowledges that Plaintiff presented a defense of innocence and called alibi witnesses. Id., ¶¶ 133-134.

did not testify truthfully nor did it discount the possibility that his identification of Plaintiff was accurate, but opined that "chance is not tantamount to proof beyond a reasonable doubt." Id., p. 3.

The decision confirms that both the show-up procedure and initial photographic array were suppressed by the trial court, and that alibi evidence was presented at trial. Id. Most significantly, in vacating Plaintiff's conviction, Judge McCarty held that

> While, for the foregoing reasons, this Court finds that Defendant is entitled to the relief sought by the herein motion, it does not credit any claims of police misconduct as all are exclusively the product of conjecture and supposition. While it is certainly true that the case detectives' paperwork was lacking and should have been maintained in a more complete fashion, it does not naturally follow that either Det. Salattolo [sic] or Det. Garcia was dishonest in their recitation of the events which lead to the recovery of a "blue tote bag with white handles" similar in appearance to one utilized during the armed robbery from Defendant's apartment. So too, the defense's conclusions about Ronald Deighan and its claim that Defendant's trial was "marred by false police testimony" lack factual support and are buttressed merely by speculation.
>
> ***
>
> Furthermore, to the extent the moving papers include defalcations committed by Det. Lt. Astorino ("Lt. Astorino"), ***Lt. Astorino did not participate in any aspect of the police investigation relating to Defendant's commission of the charged crimes***. Lt. Astorino's sole connection to the within indictment is his tangential involvement in a line-up proceeding at which the co-defendant was identified…Importantly, Lt. Astorino's testimony regarding this event was largely, if not wholly, verified by the civilian witness who viewed the line-up…Consequently, Det. Lt. Astorino's proven malfeasance with respect to other cases is without bearing upon the herein prosecution.
>
> Similarly, although the moving papers detail wrongdoing in connection with unrelated matters on the part of Det. James Garcia ("Det. Garcia"), Det. Garcia was not present during the commission of the crime, did not testify at the felony hearing, nor at the *Wade* hearing or Defendant's trial. None of the police-arranged identification procedures that Det. Garcia was involved in executing was introduced at trial. Furthermore, while Det. Garcia was present when the above-discussed blue tote bag with white handles was recovered from Defendant's apartment, he was not the sole witness to this event…Consequently, his subsequently committed, egregious defalcations lack relevance to the instant motion.
>
> Id., pp. 4-5 (emphasis added).

Plaintiff subsequently commenced the instant action on or about March 20, 2026. See ECF Doc. No. 1. It contains sixteen causes of action: (1) a federal malicious prosecution claim under 42 U.S.C. § 1983 against Garcia and Salottolo; (2) a § 1983 claim for evidence manufacturing and denial of a fair trial under the Fifth, Sixth, and Fourteenth Amendments against Garcia and Salottolo; (3) a § 1983 Russo claim for unreasonable seizure, denial of due process and a fair trial, and denial of reasonable bail due to the pretrial withholding of favorable evidence likely to result in Plaintiff's release from custody against Garcia and Salottolo; (4) a § 1983 Brady claim against Garcia and Salottolo; (5) a § 1983 claim for pretrial detention without probable cause in violation of the Fourth Amendment against Garcia and Salottolo; (6) a § 1983 claim for failure to intervene against Astorino, Garcia and Salottolo; (7) a § 1983 claim for conspiracy to deprive Plaintiff of his civil rights against Astorino, Garcia and Salottolo; (8) a Monell claim against Defendant County of Westchester based on the conduct of the District Attorney's office; (9) a Monell claim against Defendant County of Westchester based on a delegated policymaker's direct infliction of constitutional injury; (10) a Monell claim against Mount Vernon based on the conduct of the Mount Vernon Police Department; (11) a § 1983 claim for supervisory liability against Astorino; (12) negligent hiring, training, retention, and supervision against Mount Vernon and County of Westchester; (13) a state claim for malicious prosecution against Astorino, Garcia and Salottolo; (14) a claim for *respondeat superior* against Mount Vernon and County of Westchester; (15) a state claim for violation of New York constitutional due process against Mount Vernon and County of Westchester; and (16) a § 1983 claim for unduly suggestive identification procedures in violation of the Fourth, Fifth, Sixth, and Fourteenth Amendments against Defendant Christopher J. O'Brien, as Executor of the Estate of James H. O'Brien.

## ARGUMENT

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While a complaint need not provide detailed factual allegations, "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted, alteration in original). Rather, a viable claim must contain factual allegations regarding each of its material elements. Id., at 562-563. Those factual allegations "must be enough to raise a right to relief above the speculative level." Id., at 555

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint[2]." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). In deciding whether a complaint states a claim upon which relief can be granted, the Court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determine whether the remaining factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." Iqbal, supra, at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and

[2] Mount Vernon Defendants' Exhibit B, the vacatur decision, is incorporated by reference in the TAC. See Ex. A, ¶ 170. The decision can therefore be considered in the context of this motion.

common sense." Id. Ultimately, the pleading standard set forth by Fed. R. Civ. P. 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id., 678.

Furthermore, "[w]here the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss." Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 162 (2d Cir. 1989). Such a motion is properly treated as a Rule 12(b)(6) motion to dismiss rather than a Rule 12(b)(1) motion to dismiss for lack of jurisdiction. Id.

**ALL BUT ONE OF PLAINTIFF'S CLAIMS AGAINST THE MOUNT VERNON DEFENDANTS ARE TIME-BARRED**

The statute of limitations for 42 U.S.C. § 1983 claims in New York is three years. Kane v. Mount Pleasant Cent. Sch. Dist., 80 F.4th 101 (2d Cir. 2023) (citing CPLR § 214(5)). "As a general matter, the statute of limitations begins to run when the plaintiff has a complete and present cause of action." Reed v. Goertz, 598 U.S. 230, 235 (2023) (internal quotation marks and citation omitted). Plaintiff's second, third, fourth and fifth causes of action all deal with either evidence fabrication and withholding during the criminal investigation and trial or Plaintiff's pretrial detention. Those claims accrued at the time of the alleged wrongdoing or event, all of which occurred during the criminal investigation and trial prior to Plaintiff's 1983 conviction. Those claims must be dismissed as the statute of limitations for each expired in 1986 at the latest. The eleventh cause of action, alleging supervisory liability against Astorino, is facially untimely for the same reasons. Setting aside Astorino's lack of involvement in the criminal investigation into the Vernon Stars robbery, the eleventh cause of action likewise expired no later than 1986.

For the conspiracy claim, such a cause of action "accrues and the statute of limitations begins to run from the time of commission of the overt act alleged to have caused damage." Chodos v. FBI, 559 F. Supp. 69, 74 (S.D.N.Y. 1982). The latest overt act identified by Plaintiff was the

suppression of exculpatory and impeachment evidence during his trial, which resulted in his conviction in 1983. Ex. A, ¶ 267. Plaintiff's conspiracy claim is therefore extremely untimely, and his seventh cause of action should be dismissed. Meanwhile, a failure to intervene claim accrues "when the purported failure to intervene occurs." Watt v. City of New York, 740 F. Supp. 3d 212, 227 (E.D.N.Y. 2024). The three-year statute of limitations began running, at the latest, once Plaintiff was released from prison because there was nothing left to intervene in at that point. As of 1995, this claim was untimely.

Plaintiff asserts a state claim for malicious prosecution against the three individual Mount Vernon Defendants as the thirteenth cause of action. The statute of limitations for this claim is one year. Gallagher v. Directors Guild of America, Inc., 144 A.D.2d 261 (1st Dept. 1988). While the claim did not accrue until his conviction was vacated on December 23, 2024, the statute of limitations nonetheless expired three months prior to the commencement of this action, on or about December 23, 2025. See Ex. B.

With respect to his Monell claim against Mount Vernon, such claims accrue "when it is clear, or should be clear, that the harmful act is the consequence of a county 'policy or custom.'" Pinaud v. County of Suffolk, 52 F.3d 1139, 1157 (2d Cir. 1995). A majority of the cases that Plaintiff uses as examples of Mount Vernon's purportedly unconstitutional practices post-date his conviction and are from the 1990s and early 2000s, with the earliest example occurring in 1984. Ex. A, e.g., ¶¶ 162, 174, 176-186, 189. Plaintiff therefore knew or should have known of these alleged practices long before March 2023, which would be three years before he filed his original complaint. His Monell claim against Mount Vernon is facially untimely and should be dismissed.

Finally, Plaintiff's state claims against Mount Vernon are subject to a separate statute of limitations from that applicable to the individual Mount Vernon Defendants. Plaintiff was required

to file his claims against Mount Vernon within one year and ninety days of accrual. McKie v. LaGuardia Community College/CUNY, 85 A.D.3d 453 (1st Dept. 2011); Gen. Mun. Law § 50-i; CPLR § 217-a. He failed to do so, and his twelfth, fourteenth and fifteenth causes of action against Mount Vernon must be dismissed as untimely.

## IN THE ALTERNATIVE, PLAINTIFF FAILS TO STATE A VALID CLAIM AGAINST THE MOUNT VERNON DEFENDANTS

### 1. Plaintiff fails to adequately plead the personal involvement of Defendant Astorino

The personal involvement of an individual defendant in the alleged constitutional deprivation is required for liability to be imposed under § 1983. Wright v. Smith, 21 F.3d 496 (2d Cir. 1994); Back v. Hastings-on-Hudson Union Free School District, 365 F.3d 107 (2d Cir. 2004) "Only those who actually cause a deprivation of rights are liable under § 1983, and personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999) (internal quotation marks omitted). To be held individually liable under § 1983, a defendant's conduct must be "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Matican v. City of New York, 524 F.3d 151, 158-159 (2d Cir. 2008).

In large part, Plaintiff settles for bare legal conclusions when it comes to Astorino's involvement in the unconstitutional conduct that allegedly occurred. Factually, the only allegations that are included in the TAC with respect to Astorino specifically in the context of the subject criminal investigation of Plaintiff are (1) that he had knowledge of and approved the use of initial photographic array created by Salottolo and Garcia (which was suppressed at trial); (2) that he approved the search warrant drafted by Garcia despite having "knowledge of its falsity by virtue of his earlier participation in creating the suggestive photo array and his knowledge of the

investigation and lack of evidence incriminating Mr. Koonce[3]"; (3) that he, along with Salottolo and Garcia, forwarded Salottolo's and Garcia's misleading police reports to the District Attorney's office and spoke with the District Attorney in anticipation of Plaintiff being criminally charged; and (4) that he, acting in concert with Garcia, Salottolo, and others, caused a false felony complaint report alleging Plaintiff had committed the Vernon Stars robbery to be forwarded to the District Attorney. Ex. A, ¶¶ 64, 96, 109-114, 117. With each of these allegations, the TAC attempts to remedy the failure to plead facts regarding Astorino's personal involvement primarily by summarily lumping him in with wrongdoing purportedly carried out specifically by Salottolo and Garcia – essentially guilt by association – while emphasizing the irrelevant fact that Astorino pleaded guilty to entirely unrelated federal charges a decade after Plaintiff's trial[4]. This is impermissible and insufficient to plead a valid § 1983 claim against Astorino[5].

**2. <u>Plaintiff fails to adequately plead an unconstitutional policy or practice pursuant to which his rights were violated</u>**

Under 42 U.S.C. § 1983, a plaintiff must prove that (1) conduct by a "person", (2) under color of state law, (3) was a proximate cause of (4) the deprivation of a federally protected right. <u>Monell v. Department of Social Serv</u>., 436 U.S. 658 (1978). "A municipality cannot be found liable under 42 U.S.C. Section 1983 simply because it employs a tortfeasor." <u>Harley v. City of New York</u>, 36 F.Supp.2d 136, 142 (S.D.N.Y. 1999) (citation omitted).

---

[3] The TAC fails to explain why the photographic array or other aspects of Garcia's and Salottolo's criminal investigation should have tipped Astorino off about the alleged falsity of the search warrant.

[4] The single concrete wrongful act alleged to have been personally committed by Astorino in the entire TAC in connection with the Vernon Stars robbery investigation was coercing a witness to pick out Plaintiff's brother in a lineup, which has no bearing on or relevance to the alleged violations of Plaintiff's constitutional rights. Ex. A, ¶ 119.

[5] Astorino's lack of personal involvement in the conduct that occurred during the Vernon Stars robbery investigation was confirmed in no uncertain terms by the Judge who vacated Plaintiff's conviction, who stated that "Astorino did not participate in any aspect of the police investigation relating to Defendant's commission of the charged crimes." Ex. B, p. 4.

To prevail on a § 1983 claim against a municipality, a plaintiff must prove that her rights were violated by municipal employees, who were acting in accordance with a municipal policy or custom, and that such policy or custom caused the injury. This standard ensures that a municipality is liable only for constitutional violations which arise from the decisions of its legislative body or of officials whose acts are those of the municipality. Tenenbaum v. Williams, 193 F.3d 581 (2d Cir. 1999). Thus, a municipality cannot be sued for damages unless the plaintiff can plead and prove that an official policy, custom or practice caused his alleged injury. Monell, supra; Reynolds v. Giuliani, 506 F.3d 183 (2d Cir. 2007). "To demonstrate a *de facto* policy or custom through a widespread practice, a plaintiff must show that the policymaker was aware of a subordinate's unconstitutional actions, and consciously chose to ignore them, effectively ratifying the actions." Buari v. City of New York, 530 F. Supp. 3d 356, 398 (S.D.N.Y. 2021) (internal quotation marks and citation omitted). "So long as the discriminatory practices of city officials are persistent and widespread, they "could be so permanent and well settled as to constitute a 'custom or usage' with the force of law," and thereby generate municipal liability." Sorlucco v. New York City Police Dep't, 971 F.2d 864, 870-871 (2d Cir. 1992), quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 168 (1970). "Under the failure to supervise or discipline theory, a plaintiff must show that the municipality failed to adequately supervise or discipline its employees (thereby implicitly encouraging or ratifying their unlawful conduct)...[and] that such a failure of supervision or discipline was tantamount to deliberate indifference." Buari, supra, at 400 (citation omitted, alterations in original). "An obvious need [for better supervision] may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995).

The only example that Plaintiff's TAC uses to allege a widespread custom or practice within Mount Vernon that predates the criminal investigation involving Plaintiff does not include remotely similar conduct to that which is alleged to have occurred during the Vernon Stars robbery investigation. Instead, it involves an investigation by the District Attorney's office into gambling graft within the Mount Vernon Police Department in 1974. Ex. A, ¶ 174. Even setting aside the markedly different conduct involved in the 1974 example, that single example case would be insufficient from a pleading standpoint because "[p]leadings articulating only isolated instances of unconstitutional behavior do not plausibly allege a well-settled custom." Douglas v. City of Peekskill, 2023 WL 2632217, *25 (S.D.N.Y. 2023). The remainder of the example cases post-date Plaintiff's case. Ex. A, ¶¶ 176-185. However, "[a] Plaintiff cannot point to contemporaneous or subsequent violations to establish a pattern of violations that would provide notice to the city and the opportunity to conform to constitutional dictates." Douglas, supra, at *24-25 (internal quotation marks, alterations, and citation omitted). Plaintiff's contention (TAC, ¶ 327) that Mount Vernon lacked certain procedures related to probable cause and proper investigatory tactics likewise fails to suffice because "the absence of a policy is not a policy and is not actionable under Monell." Zachary v. City of Newburgh, 2014 WL 1508705, *15 (S.D.N.Y. 2014).

Plaintiff's claim of § 1983 liability against Mount Vernon fares no better to the extent it is premised on a failure to train. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick v. Thompson, 563 U.S. 51, 61 (2011). "It is impossible to prevail on a claim that the Town's training program was inadequate without any evidence as to whether the Town trained its officers…how the training was conducted, how better or different training could have prevented the challenged conduct, or how a hypothetically well-trained officer could have acted under the circumstances." Amnesty Am. v. Town of W.

Hartford, 361 F.3d 113, 130 (2d Cir. 2004) (internal quotation marks and citation omitted). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." Connick, supra, at 62 (internal quotation marks omitted). Again, the only prior example of a possible violation involved taking bribes in connection with gambling enforcement. Such conduct has nothing to do with fabricating or withholding evidence during a criminal investigation or trial. Since Plaintiff's TAC fails to plead facts sufficient to support an inference of prior similar constitutional violations to those alleged with respect to the Vernon Stars robbery investigation, the tenth cause of action must be dismissed.

The TAC includes the boilerplate legal conclusion that Anthony M. Mosca, as Chief of Police and/or Commissioner, the Mayor, and the City Council all possessed final policymaking authority over the resources, oversight, and accountability mechanisms of the Mount Vernon Police Department but delegated that authority. Ex. A, ¶ 323. This is insufficient to plead policymaker liability against Mount Vernon because, aside from being a bald legal assertion that is not entitled to the presumption of truth, it does not factually explain how that delegation proximately caused the constitutional violations. He also fails to allege any other specific final policymaker act that could suffice.

**3. Plaintiff fails to adequately plead a Brady claim**

Plaintiff's Brady claim must be dismissed. "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued. Strickler v. Greene, 527 U.S. 263, 281-282 (1999). Here, the evidence at issue was not suppressed by the Mount Vernon Defendants. Both the initial photographic array and the show up procedure were disclosed to

Plaintiff's criminal counsel and later suppressed by the trial court. Ex. B, pp. 3-4. As the decision vacating Plaintiff's conviction confirmed, none of the identification procedures in which Garcia was involved were even introduced at trial. Id., p. 5. Furthermore, this evidence was not favorable to Plaintiff.

Plaintiff's claim further identifies the Deighan statement and a falsified search warrant application pertaining to the blue tote bag as Brady material that was suppressed by the individual Mount Vernon Defendants. Again, however, the decision that vacated Plaintiff's conviction negates the contention that the falsity of the statement or search warrant inventory were suppressed. The Judge there noted that Mr. Deighan did not testify at trial, was never located in connection with the reinvestigation of the case, and never disavowed the information contained in his statement. Id., p. 4. The vacatur Judge further opined that there was no evidence that Salottolo or Garcia acted dishonestly with respect to the recovery of the tote bag[6]. Id. Finally, regarding the alibi evidence, that was also not suppressed by the individual Mount Vernon Defendants given that Plaintiff presented alibi witnesses and a defense of actual innocence at his trial. Id., p. 3, fn. 2. As a result of the foregoing, the fourth cause of action should be dismissed.

**4. Plaintiff fails to state a claim for negligent hiring, training, retention, and supervision**

As a threshold matter, "as a matter of public policy, New York does not recognize negligence claims predicated on a criminal prosecution." McCray v. City of New York, 2007 WL 4352748, *102 (S.D.N.Y. 2007). In any event, "where an employee is acting within the scope of

[6] The Mount Vernon Defendants respectfully submit that Plaintiff's claims, insofar as they are premised on the alleged intentional wrongdoing by Salottolo, Astorino, or Garcia during the criminal investigation and trial, are barred by collateral estoppel as he had a full and fair opportunity to litigate the issue of the individual Mount Vernon Defendants' alleged malfeasance in connection with the vacatur of his conviction. In vacating the conviction, the Judge opined that Plaintiff's claims of intentional wrongdoing by the individual Mount Vernon Defendants were "exclusively the product of conjecture and supposition" and "lack[ed] factual support and are buttressed merely by speculation." Ex. B, p. 4. Judge McCarty also explicitly held that the initial photographic array was not constitutionally infirm. Id.

his or her employment, the employer is liable for the employee's negligence under a theory of respondeat superior and no claim may proceed against the employer for negligent hiring, retention, supervision or training." Wienclaw v. East Islip Union Free Sch. Dist., 192 A.D.3d 945, 947 (2d Dept. 2021) (citation omitted). The factual allegations of the TAC clearly assert that the conduct by the individual Mount Vernon Defendants occurred within the scope of their employment as Mount Vernon police officers. This conclusion is supported by the fact that Plaintiff asserted a cause of action for *respondeat superior* against Mount Vernon. As such, Plaintiff's twelfth cause of action should be dismissed.

Even if the TAC is held not to allege that the individual Mount Vernon Defendants acted within the scope of their employment, the negligent hiring, training, retention and supervision cause of action nonetheless fails to state a claim. With respect to negligent retention and supervision, "a necessary element of such causes of action is that the employer knew or should have known of the employee's propensity for the conduct which caused the injury." Kenneth R. v. Roman Catholic Diocese, 654 N.Y.S.2d 791, 793 (2d Dept. 1997). The same is true with respect to a negligent training claim. See Doe v. Yeshiva of Brooklyn, 247 A.D.3d 1147 (2d Dept. 2026). As far as propensity allegations go, the only citations to similar conduct are in reference to conduct by Garcia that allegedly occurred in 1984 or later, after the criminal investigation and trial of Plaintiff had already concluded. Ex. A, ¶¶ 162, 176-177, 180. The TAC makes no factual claims regarding similar conduct by Salottolo outside of the conduct that allegedly occurred in connection with Plaintiff's arrest and trial. With respect to Astorino, the only outside conduct alleged is both materially dissimilar to his alleged wrongdoing in connection with the investigation into the Vernon Stars robbery and it post-dates Plaintiff's arrest and trial. Id., ¶¶ 162, 181. Because the TAC does not include any factual allegations that Mount Vernon knew or had reason to know, prior

to the investigation into the Vernon Stars robbery in 1981, of any of the individual Mount Vernon Defendants' propensity for the type of conduct in which they are alleged to have engaged with respect to the criminal investigation of Plaintiff, he cannot maintain a claim for negligent retention, training, or supervision against Mount Vernon.

To the extent a negligent hiring claim is asserted, it fails as a matter of law for similar reasons. "There is no common-law duty to institute specific procedures for hiring employees unless the employer knows of facts that would lead a reasonably prudent person to investigate the prospective employee." Kenneth R, supra, at 795. The TAC does not specifically allege that Mount Vernon was on notice that it needed to better or further investigate Garcia, Salottolo or Astorino prior to hiring them, nor does it contain any factual allegations that would support such an inference. The twelfth cause of action should be dismissed as a result.

**5. Alternatively, Mount Vernon cannot be held liable for alleged intentional torts under a theory of respondeat superior**

Under *respondeat superior*, an employer can be held vicariously liable for the acts of its employees acting within the scope of their employment. "Pursuant to this doctrine, the employer may be liable when the employee acts negligently or intentionally, so long as the tortious conduct is generally foreseeable and a natural incident of the employment." Judith M. v. Sisters of Charity Hosp., 93 N.Y.2d 932, 933 (1999). However, Mount Vernon cannot be held vicariously liable for the individual defendants' alleged intentional acts in this case. Assuming only for purposes of this motion the truth of Plaintiff's factual allegations against the individual Mount Vernon Defendants, those intentional acts are of the sort that are committed "for purely personal motives and were an obvious departure from the normal duties [of City employees]." Mataxas v. North Shore Univ. Hosp., 211 A.D.2d 762, 763 (2d Dept. 1995). The intentional acts underpinning Plaintiff's

fourteenth[7] and fifteenth causes of action are facially outside the scope of the individual Mount Vernon Defendants' employment as detectives, and Mount Vernon cannot be held vicariously liable for those claims as a result.

## **CONCLUSION**

Based on the foregoing, Plaintiff's Third Amended Complaint lacks sufficient factual allegations to make out a cause of action against the Mount Vernon Defendants in addition to containing time-barred causes of action. The Mount Vernon Defendants therefore respectfully submit that their motion to dismiss should be granted in its entirety, and for such other and further relief as this Court deems necessary and just.

Dated: New York, New York
September 25, 2026

COURTNEY CHADWELL, ESQ

[7] The Mount Vernon Defendants further note that *respondeat superior* is not a stand-alone cause of action. See Alexander v. Westbury Union Free Sch. Dist., 829 F. Supp. 2d 89 (E.D.N.Y. 2011).

## CERTIFICATION OF WORD COUNT

It is hereby certified pursuant to the Individual Rules of this Court that the foregoing memorandum was prepared on a computer.

A proportionally spaced typeface was used as follows:

Name of Typeface: Times New Roman

Point size: 12

Line Spacing: Double

Word Count: The total number of words in the memorandum, inclusive of headings and footnotes and exclusive of the caption, tables of contents and authorities, and signature block is 6,180.

Dated: New York, New York
September 25, 2026

COURTNEY CHADWELL