NEWIRTH LINEHAN

October 2, 2026

**VIA ECF**
The Honorable Kenneth M. Karas
United States District Court
Southern District of New York
The Hon. Charles L. Brieant Jr. Federal Building and U.S. Courthouse
300 Quarropas Street
White Plains, NY 10601

Re: *Koonce v. City of Mount Vernon, et al.*, No. 7:26-cv-02310 (KMK)(VR)
Response to the Estate's Pre-Motion Letter (Dkt. 61); Proposed Schedule

Dear Judge Karas:

We write pursuant to the Court's September 28, 2026 Order (Dkt. 65) in response to the pre-motion letter filed on behalf of Defendant Christopher J. O'Brien, as Executor of the Estate of James H. O'Brien (the "Estate") (Dkt. 61). Plaintiff does not see a need to amend the Third Amended Complaint (Dkt. 49) ("TAC"); the Estate's anticipated motion is without merit for the reasons set out below and in our July 17, 2026 letter (Dkt. 40) responding to the County's pre-motion letter (Dkt. 38), which we incorporate herein by reference. Should the Court determine that the prior pre-motion conference addressing the County's pre-motion letter is sufficient, the parties have agreed to waive the conference and submit a proposed briefing schedule. *See infra* at 3.

<u>O'Brien Is Not Entitled to Absolute Immunity and His Involvement Is Adequately Pleaded</u>
First, absolute immunity does not reach the conduct alleged. When a prosecutor "performs the investigative functions normally performed by a detective or police officer," he receives only the qualified immunity the police would receive for the same act. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273–74 (1993); *Burns v. Reed*, 500 U.S. 478, 492–96 (1991). The line is probable cause, not arrest: "A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested," and even after probable cause exists he "may engage in 'police investigative work' that is entitled to only qualified immunity." *Buckley*, 509 U.S. at 274 & n.5. The TAC alleges that no probable cause existed when O'Brien directed the showup, that Mr. Koonce had not been legitimately identified by any witness, and that O'Brien acted in an investigative capacity. (TAC ¶¶ 83, 363–64.) The Estate bears the burden of establishing that the function was prosecutorial. *Hill v. City of New York*, 45 F.3d 653, 660 (2d Cir. 1995); *Bermudez v. City of New York*, 2013 U.S. Dist. LEXIS 20371, at *14 (S.D.N.Y. Feb. 14, 2013).

*Bermudez* is not to the contrary: a prosecutor "functions in an investigatory capacity up and until he has gathered sufficient evidence to demonstrate probable cause to effect an arrest." *Bermudez*, 2013 U.S. Dist. LEXIS 20371, at *14. The prosecutor there arrived at the precinct seven hours

after the arrest, there was no non-conclusory allegation of what he did at a lineup that was tainted, if at all, by photo procedures the detectives had conducted before he arrived, and his presence was at most "evaluating and organizing evidence collected by the police for presentation to a grand jury and at trial." *Id.* at *17–18 & n.3. Here the TAC pleads the opposite: O'Brien was not present evaluating evidence the police had gathered; he selected the procedure and ordered the detectives to carry it out—a one-on-one showup of a handcuffed man at the victim's bedside, without exigency, in place of the lineup other available witnesses could have viewed—before any legitimate identification existed and before probable cause. (TAC ¶¶ 83, 86–90, 299, 363.) Directing the police to generate identification evidence is the investigative function *Buckley* and *Burns* leave unprotected. Second, the TAC alleges O'Brien's direct participation—he "directed and authorized" the showup (TAC ¶¶ 86, 299, 363)—which is personal involvement in its most direct form. *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020).

<u>Suppression of the Showup Neither Cured the Injury Nor Broke the Causal Chain</u>
Second, the suppression of the showup identification before trial neither erased the injury nor severed causation. The showup identification was used to detain, charge, and indict Mr. Koonce for the roughly twenty months between his arrest on June 30, 1981 and the suppression ruling of February 16, 1983—a deprivation of liberty the Fourth Amendment reaches when it rests on tainted evidence, *Manuel v. City of Joliet*, 580 U.S. 357, 364–69 (2017), and one the TAC alleges O'Brien's conduct caused. (TAC ¶ 366 (O'Brien caused Mr. Koonce "to be identified, prosecuted, detained, and convicted," depriving him of the right "to be free from unreasonable seizure"); see also ¶ 319.) *Cerbone v. County of Westchester*, 508 F. Supp. 780 (S.D.N.Y. 1981), on which the Estate principally relies, does not hold otherwise. Cerbone is inapposite, insofar as it *Cerbone* does not address a prosecutor who directs a show-up; its only ruling on the District Attorney applied *Imbler* to "judicial (as opposed to investigative or administrative) functions," *id.* at 783—the line *Buckley* draws.

As to the conviction, the Estate's own authority supplies the governing rule. A later judicial ruling breaks the chain of causation only "[i]n the absence of evidence that [the defendant] misled or pressured the prosecution or trial judge." *Wray v. City of New York*, 490 F.3d 189, 193 (2d Cir. 2007); see *Zahrey v. Coffey*, 221 F.3d 342, 352–53 (2d Cir. 2000) (initial wrongdoer answers for the reasonably foreseeable judicial decision his misconduct produces). The Estate's letter states that the trial court's independent-source ruling rested on Mr. Shuler's "identification of Plaintiff in a photo array." (Dkt. 61 at 2.) The TAC alleges that the array was itself the product of misconduct concealed from the court—an array containing a police-enlarged photograph of Plaintiff and built from suspects rather than fillers, a witness prompted to choose, and a two-page array reduced to one—and that the court made its independent-source finding without knowing any of it. (TAC ¶¶ 61–78, 112(a)–(b), 125–26, 365.) An independent-source ruling that rests on a tainted identification the court was deceived about is the circumstance *Wray* and *Zahrey* describe, not an intervening cause. The Estate's cases turned on the absence of such an allegation. *King-Knight v. City of New York*, 2025 U.S. Dist. LEXIS 59143, at *38–41 (S.D.N.Y. Mar. 28, 2025) (complaint "does not plausibly allege that the NYPD defendants misled the prosecutors"); *Delamota v. City of New York*, 683 F. App'x 65, 67 (2d Cir. 2017) ("Delamota does not allege that the trial court was misled"); *Perkins v. New York City*, 2019 U.S. Dist.

LEXIS 167217, *19 (E.D.N.Y. Sept. 27, 2019) (guilty plea). Nor did the showup's suggestion disappear with the suppression order: the TAC alleges that it corrupted Mr. Shuler's memory and inflated his confidence, producing the in-court identification on which the prosecution's case entirely rested—a question of fact. (TAC ¶¶ 127–28, 365.)

The Estate's reliance on the vacatur and suppression decisions (Dkt. 61 at 1–2) fails for the reasons stated in Plaintiff's July 17 letter (Dkt. 40 at 2–3). Neither is part of the pleadings, and crediting either for its truth would require conversion under Rule 12(d). *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002). Nor could either have preclusive effect. The vacatur motion was decided on the papers, on consent, without a hearing, testimony, cross-examination, or discovery—no full and fair opportunity to litigate—and the prosecution's sworn Consent to Vacate affirmed the misconduct the Estate says the court rejected. (TAC ¶¶ 165–70.) *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455 (1985); *Schwartz v. Public Adm'r*, 24 N.Y.2d 65, 71 (1969). And the suppression court's independent-source ruling is the ruling the TAC alleges was procured through false testimony and concealment. (TAC ¶¶ 125–26, 365.)

<u>Qualified Immunity Cannot Be Resolved on the Pleadings</u>
Third, qualified immunity is available on a Rule 12(b)(6) motion only where the defense appears on the face of the complaint. *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004). The TAC pleads the opposite: that O'Brien directed a one-on-one showup of a handcuffed, arrested man with no exigency, when the victim's injuries were not life-threatening and other eyewitnesses were available for a lineup, "contrary to then-settled law," and that no reasonable official would have believed the conduct lawful. (TAC ¶¶ 73, 86, 90, 366.) That law was settled fourteen years before the showup. *Stovall v. Denno*, 388 U.S. 293, 302 (1967) (showup "widely condemned" absent necessity). The contention that the TAC does not allege what O'Brien knew asks the Court to draw inferences against the pleader; an assistant district attorney who directs a hospital showup is charged with knowledge of the circumstances he invokes to justify it, and what he knew is a question of fact.

<u>Proposed Schedule</u>
Plaintiff and the Estate have conferred. Given the substantial overlap between the Estate's arguments and those presented in the County's pending motion, and the Court's guidance at the August 10, 2026 conference, the parties respectfully submit that a further pre-motion conference is likely unnecessary under the circumstances and are willing to waive it. If the Court agrees, the parties have agreed, subject to the Court's approval, to the following briefing schedule: the Estate's motion to dismiss by November 5, 2026; Plaintiff's consolidated opposition to the County's and the Estate's motions by December 7, 2026; and the County's and the Estate's replies by December 23, 2026.

This schedule leaves the dates for the Mount Vernon Defendants' pending motion (Dkt. 62) unchanged; Plaintiff's opposition to the Mount Vernon Defendants' motion remains due November 6, 2026, with their reply due November 20, 2026 (Dkt. 54). Pursuant to Section I.C of the Court's Individual Practices: the current dates were set by the Motion Scheduling Order (Dkt. 47), as amended by the Court's September 3, 2026 Order (Dkt. 54); this is Plaintiff's first request to modify the schedule; Defendants' prior request (Dkt. 53) was granted (Dkt. 54); the County

and the Estate consent; and the Mount Vernon Defendants consent. We thank the Court for its consideration.

Respectfully submitted,

Karen A. Newirth
*Counsel for Plaintiff Jeffrey Koonce*

cc: All Counsel of Record (via ECF)