UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X

JEFFREY KOONCE,

Plaintiff,

-against-

CITY OF MOUNT VERNON; COUNTY OF WESTCHESTER; Detective JAMES GARCIA; Detective Lieutenant ROBERT ASTORINO; Detective DANIEL SALOTTOLO; JOHN DOES 1–10; JOHN DOE 11, as Administrator of the Estate of ANTHONY M. MOSCA; JOHN DOE 12, as supervising officer of the MVPD detective unit; and CHRISTOPHER J. O'BRIEN as Executor of the Estate of JAMES H. O'BRIEN,

Defendants.

---------------------------------------------------------------------X

Case No.: 26-cv-02310 (KMK)

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANT CHRISTOPHER J. O'BRIEN AS EXECUTOR OF THE ESTATE OF JAMES H. O'BRIEN TO DISMISS THE THIRD AMENDED COMPLAINT**

Of Counsel:
J. Patrick Carley, III, Esq.

TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP
445 Hamilton Avenue, Suite 900
White Plains, New York 10601
(914) 347-2600
*Attorneys for Defendant Christopher J. O'Brien as Executor of the Estate of James H. O'Brien*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..... 1

RELEVANT ALLEGATIONS ..... 3

LEGAL STANDARD ..... 6

ARGUMENT ..... 7

POINT I -- THE TAC FAILS TO STATE A CLAIM AGAINST THE ESTATE ..... 7

A. Plaintiff's Due Process and Unreasonable Seizure Claims Are Barred By The Statute of Limitations ..... 7

B. ADA O'Brien Is Entitled To Absolute Immunity ..... 9

C. The TAC Fails to Plausibly Plead A 42 U.S.C. §1983 Claim Against ADA O'Brien ..... 10

1. ADA O'Brien Did Not Violate Plaintiff's Rights to Due Process And A Fair Trial ..... 11

2. ADA O'Brien Did Not Violate Plaintiff's Right To Be Free From Unreasonable Seizures ..... 20

D. ADA O'Brien Is Entitled To Qualified Immunity ..... 25

CONCLUSION ..... 27

WORD COUNT CERTIFICATION ..... 28

## TABLE OF AUTHORITIES

***Cases*** **_Page(s)_**

*Adams v. City of Syracuse*, No. 21-cv-0650(LEK)(ATB),
2022 U.S. Dist. LEXIS 41055 (N.D.N.Y. Mar. 8, 2022) ....20

*Allen v. Antal*, No. 12-cv-8024,
2014 U.S. Dist. LEXIS 79031 (S.D.N.Y. Mar. 13, 2014) ....8

*Anilao v. Spota*,
27 F.4th 855 (2d Cir. 2022) ....9

*Aschroft v. Iqbal*,
556 U.S. 662 (2009) ....6, 10, 15

*Banyan v. Sikorski*, No. 25-1425,
2026 U.S. App. LEXIS 11259 (2d Cir. Apr. 21, 2026) ....23

*Barnes v. City of N.Y.*,
68 F.4th 123 (2d Cir. 2023) ....12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....6

*Bermudez v. City of N.Y.*,
790 F.3d 368 (2d Cir. 2015) ....13, 16, 19

*Bermudez v. City of N.Y.*, No. 11-cv-750(LAP),
2013 U.S. Dist. LEXIS 20371 (S.D.N.Y. Feb. 14, 2013) ....9

*Betts v. Shearman*,
751 F.3d 78 (2d Cir. 2014) ....24

*Buckley v. Fitzsimmons*,
509 U.S. 259 (1993) ....26

*Caldarola v. Calabrese*,
298 F.3d 156 (2d Cir. 2002) ....23

*Candelario v. City of N.Y.*, No. 12-cv-1206,
2013 U.S. Dist. LEXIS 48412 (S.D.N.Y. Apr. 3, 2013),
*aff'd*, 539 F. App'x 17 (2d Cir. 2013) ....24

*Casillas v. Murray*,
662 F. Supp. 2d 300 (W.D.N.Y. 2009) ....13

*Cerbone v. Cnty. of Westchester*,
508 F. Supp. 780 (S.D.N.Y. 1981) ....14, 26

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) ....................6

*City of Okla. City v. Tuttle*,
471 U.S. 808 (1985) ....................10

*Coakley v. Jaffe*,
49 F. Supp. 2d 615 (S.D.N.Y. 1999) ....................10

*Davis-Guider v. City of Troy*, No. 23-589,
2024 U.S. App. LEXIS 32451 (2d Cir. Dec. 23, 2024) ....................11, 12

*Day v. Morgenthau*,
909 F.2d 75 (2d Cir. 1990) ....................7

*Delamota v. City of N.Y.*,
683 Fed. Appx. 65 (2d Cir. 2017) ....................16

*Deronette v. City of N.Y.*, No. 05-cv-5275(SJ),
2007 U.S. Dist. LEXIS 21766 (E.D.N.Y. Mar. 27, 2007) ....................9, 25

*Dixon v. von Blanckensee*,
994 F.3d 95 (2d Cir. 2021) ....................6, 15

*Escalera v. Lunn*,
361 F.3d 737 (2d Cir. 2004) ....................23

*Forsythe v. City of Watertown*, 17-cv-1132(FJS)(TWD),
2020 U.S. Dist. LEXIS 45760 (N.D.N.Y. Mar. 17, 2020) ....................23

*Francis v. Coughlin*,
849 F.2d 778 (2d Cir.1988) ....................25

*Garcia v. Doe*,
779 F.3d 84 (2d Cir. 2015) ....................23

*Garnett v. Undercover Officer C0039*,
838 F.3d 265 (2d Cir. 2016) ....................11, 12

*Golino v. City of New Haven*,
950 F.2d 864 (2d Cir. 1991) ....................23

*Guan v. City of N.Y.*,
37 F.4th 797 (2d Cir. 2022) ....................21

*Hasan v. Onondaga Cnty.*, No. 18-cv-806(GLS)(ATB),
2018 U.S. Dist. LEXIS 131727 (N.D.N.Y. Aug. 2, 2018) ....................14

*Hayden v. Patterson*,
594 F.3d 150 (2d Cir. 2010) ....................6

*Hill v. City of N.Y.*,
45 F.3d 653 (2d Cir. 1995) ....................9, 10

*Hogan v. Fischer*,
738 F.3d 509 (2d Cir. 2013) ....................7

*Hudson v. Cnty. of Dutchess*, No. 12-cv-5548(KMK),
2015 U.S. Dist. LEXIS 154632 (S.D.N.Y. Nov. 14, 2015) ....................24

*Iacobi v. Felix*, No. 19-cv-03245(RPK)(ST),
2022 U.S. Dist. LEXIS 163249 (E.D.N.Y. Sept. 9, 2022) ....................21

*Johnson v. City of N.Y.*, No. 15-cv-8195,
2017 U.S. Dist. LEXIS 81359 (S.D.N.Y. May 26, 2017) ....................11

*Johnson v. Newburgh Enlarged Sch. Dist.*,
239 F.3d 246 (2d Cir. 2001) ....................25

*King-Knight v. City of N.Y.*, No. 25-1047,
2026 U.S. App. LEXIS 30223 (2d Cir. Oct. 2, 2026) ....................13, 16, 18, 19, 25

*Kramer v. Time Warner Inc.*,
937 F.2d 767 (2d Cir. 1991) ....................6

*Lopez v. Guziczek*, No. 21-cv-10099(NSR),
2025 U.S. Dist. LEXIS 72815 (S.D.N.Y. Apr. 16, 2025) ....................8

*Loria v. Gorman*,
306 F.3d 1271 (2d Cir. 2002) ....................24

*Manson v. Brathwaite*,
432 U.S. 98 (1977) ....................13

*Mapp v. Ohio*,
367 U.S. 643 (1961) ....................21

*Martinez v. Simonetti*,
202 F.3d 625 (2d Cir. 2000) ....................25

*McLean v. Cnty. of Westchester*, No. 17-cv-4492(CS),
2018 U.S. Dist. LEXIS 204269 (S.D.N.Y. Dec. 3, 2018) ....................26

*Moffitt v. Town of Brookfield*,
950 F.2d 880 (2d Cir. 1991) ....................11

*Neil v. Biggers*,
409 U.S. 188 (1972) ....................14

*Paige-Bey v. City of N.Y.*, No. 13-cv-7300(SLT)(RER),
2016 U.S. Dist. LEXIS 171504 (E.D.N.Y. Dec. 7, 2016) ....................8

*Panetta v. Crowley*,
460 F.3d 388 (2d Cir. 2006) ....................24, 25

*Peralta v. City of N.Y.*, No. 15-cv-4455(PKC),
2019 U.S. Dist. LEXIS 119988 (S.D.N.Y. July 18, 2019) ....................8

*Perkins v. N.Y.C.*, No. 17-cv-423(RRM)(PK),
2019 U.S. Dist. LEXIS 167217 (E.D.N.Y. Sept. 27, 2019) ....................14

*Pitchell v. Callan*,
13 F.3d 545 (2d Cir. 1994) ....................10

*Posr v. Court Officer Shield No. 207*,
180 F.3d 409 (2d Cir. 1999) ....................23

*Provost v. City of Newburgh*,
262 F.3d 146 (2d Cir. 2001) ....................11

*Revitalizing Auto Cmtys. Env't Response Tr. v. Nat'l Grid USA*,
92 F.4th 415 (2d Cir. 2024) ....................6

*Ricciuti v. New York Transit Auth.*,
124 F.3d 123 (2d Cir. 1997) ....................23

*Tabor v. N.Y.C.*, No. 11-cv-0195(FB),
2012 U.S. Dist. LEXIS 29004 (E.D.N.Y. Feb. 23, 2012) ....................9

*Tangreti v. Bachmann*,
983 F.3d 609 (2d Cir. 2020) ....................10

*Tankleff v. Cnty. of Suffolk*, No. 09-cv-1207(JS)(AYS),
2017 U.S. Dist. LEXIS 97472 (E.D.N.Y. June 23, 2017) ....................25

*Thompson v. City of N.Y.*,
603 F. Supp. 2d 650 (S.D.N.Y. 2009) ....................14

*Townes v. City of N.Y.*,
176 F.3d 138 (2d Cir. 1999) ....................10, 13, 16, 19

*U.S. v. Zelker*,
455 F.2d 714 (2d Cir. 1972) ....................13

*Walker v. City of N.Y.*, No. 15-cv-500(NG)(ST),
2017 U.S. Dist. LEXIS 99238 (E.D.N.Y. June 27, 2017) ....................24

*Weyant v. Okst*,
101 F.3d 845 (2d Cir. 1996) ....................21, 22

*Wheeler v. Slanovec*, No. 16-cv-9065(KMK),
2019 U.S. Dist. LEXIS 113679 (S.D.N.Y. July 9, 2019) ....................8

*Wray v. City of N.Y.*,
340 F. Supp. 2d 291 (E.D.N.Y. 2004) ....................13

*Wray v. City of N.Y.*,
490 F.3d 189 (2d Cir. 2007) ....................10, 13, 14, 16, 19, 25

*Wray v. Johnson*,
202 F.3d 515 (2d Cir. 2000) ....................13, 14

*Wright v. Smith*,
21 F.3d 496 (2d Cir. 1994) ....................11, 12, 17, 21

***<u>Statutes</u>***

42 U.S.C. §1983 ....................1, 4, 7, 8, 9, 10, 12, 14, 17, 20, 21, 25, 26

***<u>Rules</u>***

Fed. Civ. R. P. 8 ....................6

Fed. R. Civ. P. 12 ....................1, 6, 9, 27

***<u>Other</u>***

U.S. Const. Amend. IV ....................20

This memorandum of law is submitted on behalf of Defendant Christopher J. O'Brien as Executor of the Estate of James H. O'Brien ("the Estate"), in support of his motion for an Order: (i) pursuant to Fed. R. Civ. P. 12(b)(6) dismissing with prejudice the Third Amended Complaint dated August 12, 2026 ("TAC"); and (ii) for such other and further relief as the Court deems just and proper.

## PRELIMINARY STATEMENT

This action arises out of Plaintiff's arrest, prosecution, conviction and imprisonment for an armed robbery and shooting that occurred in June 1981. Despite maintaining his innocence, testifying on his own behalf and presenting an alibi defense, Plaintiff was convicted by a jury in May 1983, and thereafter served approximately eight years in prison. Decades later, in 2024, following a reinvestigation by the Conviction Review Unit of the Westchester County District Attorney ("WCDA"), Plaintiff moved to vacate his conviction, with WCDA's consent, which the New York State Supreme Court (James A. McCarty, J.) granted. (*See* Declaration of J. Patrick Carley, III dated November 5, 2026 ("Carley Decl."), Ex. "B"). Critically, Judge McCarty rejected every argument advanced by Plaintiff that newly discovered evidence established that any of the Defendants herein engaged in misconduct during his investigation and prosecution, and instead vacated on other grounds.

Plaintiff nevertheless commenced this action, asserting one claim against the Estate pursuant to 42 U.S.C. §1983 for violating his rights under the Fourth, Fifth, Sixth and Fourteenth Amendments. The TAC seeks to impose liability on the Estate on the basis that its decedent, WCDA Assistant District Attorney James O'Brien ("ADA O'Brien"), who passed away in June 2008, violated his constitutional rights by directing/authorizing the Mount Vernon Police Department ("MVPD") detectives that were investigating the crime to present Plaintiff for an

impermissibly suggestive show-up identification with the shooting victim despite the absence of exigent circumstances and the availability of other witnesses.

Despite asserting 367 allegations spanning 90 pages, the TAC utterly fails to plead that ADA O'Brien's singular act of directing/authorizing the show-up identification deprived Plaintiff of a constitutional right. For the reasons set forth below, and in the motion papers of the County of Westchester ("County") and the Mount Vernon Police Department ("MVPD"), the arguments of which are hereby adopted and incorporated as if fully set forth herein to the extent they also apply to the Estate, the TAC must be dismissed in its entirety, with prejudice, as to the Estate.

## RELEVANT ALLEGATIONS[1]

The TAC alleges that MVPD detectives, for reasons unknown, zeroed in on Plaintiff as a potential suspect in the June 1981 armed robbery and shooting. (TAC ¶¶53-57). It is alleged that MVPD prepared a photo array comprised of five "fillers" that had prior armed robbery convictions and were selected because they were potential suspects and not because of their resemblance to Plaintiff and one picture of Plaintiff that was manipulated so it was larger and darker than the pictures of the fillers. (TAC ¶¶61-63, 65-66, 166). MVPD then presented the photo array to the victim while he was recovering in the hospital and, after MVPD instructed that he should identify the shooter from the array, the victim selected Plaintiff. (TAC ¶¶71-72, 74-76).[2]

The TAC alleges that on June 30, 1981, MVPD arrested Plaintiff based entirely on the victim's photo array identification despite the existence of probable cause. (TAC ¶¶82, 93, 253; *see also* TAC ¶¶82, 109, 116-117, 120, 122, 363). The TAC alleges that after MVPD arrested Plaintiff, ADA O'Brien, while acting under color of state law, directed/authorized MVPD to bring Plaintiff to the hospital where the victim was recuperating to conduct a one-on-one show-up identification. (TAC ¶¶363, 86, 299). The TAC alleges that the show-up was conducted despite the absence of exigent circumstances and the availability of other witnesses to participate in proper identification procedures, contrary to then-settled law. (TAC ¶¶86, 90, 299). It is alleged that when ADA directed/authorized the show-up identification, ADA O'Brien was acting in an investigative capacity (TAC ¶¶363, 364), and that probable cause to arrest Plaintiff did not exist. (TAC ¶363; *see also* TAC ¶¶83, 251, 346-347).

---

1 The instant motion only addresses those facts which are relevant to the Estate, and highlights the allegations against MVPD and the County only to the extent they relate to the allegations against the Estate.

2 The TAC acknowledges that MVPD withheld information relating to "the true composition" of the photo array and "the circumstances" of the identification from WCDA (including ADA O'Brien). (TAC ¶¶9, 69, 91, 109-116, 130, 207, 231, 240-242).

The TAC alleges that the show-up identification was impermissibly suggestive because: (i) MVPD told the victim beforehand that he was about to see the person he had already identified from the photo array (TAC ¶87); (ii) Plaintiff was presented to the victim while visibly handcuffed (TAC ¶88); (iii) Plaintiff was the only person presented during the show-up (TAC ¶89); and (iv) the victim's life was not in danger (TAC ¶90). The TAC acknowledges, however, that MVPD did not fully and accurately disclose "the circumstances" of how they executed the show-up to ADA O'Brien (or anyone from WCDA). (TAC ¶¶91, 112(c), 113, 115).

The TAC alleges that MVPD thereafter prepared and forwarded misleading police reports to convince WCDA to formally charge Plaintiff (TAC ¶¶109, 111), and that WCDA, having been deceived by MVPD, decided to prosecute Plaintiff and filed a felony complaint. (TAC ¶¶115-118). Plaintiff was remanded to the Westchester County Jail upon his arrest on June 30, 1981 (TAC ¶253), but released on bail on July 23, 1981. (TAC ¶225). The TAC alleges that a felony hearing was held on July 6, 1981 (TAC ¶118), and that Plaintiff was indicted by a grand jury in August 1981 (TAC ¶¶120, 122), convicted on May 19, 1983 (TAC ¶147), and released from prison in 1992. (*Id.*). The TAC does not allege that ADA O'Brien had any further involvement in Plaintiff's arrest or prosecution following his directive/authorization to perform the show-up identification procedure. For example, it is not alleged that ADA O'Brien was involved or consulted in the decision to charge Plaintiff, or in reviewing the evidence against Plaintiff, or in preparing or presenting any aspect of the State's case at the felony hearing, grand jury proceeding or any pre-trial proceedings, or the trial itself. It is not even alleged that ADA O'Brien knew the victim had identified Plaintiff at the show-up procedure or that ADA O'Brien transmitted any evidence produced at the show-up procedure to other members of the WCDA.

The TAC confirms that the show-up identification was ultimately suppressed by the trial court before Plaintiff's trial. (TAC ¶¶125, 365; *see also* Carley Decl. Ex. "C"). However, according to the TAC, "[a]lthough the showup identification was suppressed before trial, the suggestion it introduced rendered unreliable the in-court identification that the prosecution used to convict Mr. Koonce, and the trial court's 'independent source' ruling permitting that in-court identification was procured through Defendants' false testimony and their suppression of the true circumstances of the identification procedures." (TAC ¶365; *see also* TAC ¶¶125-128).

The TAC alleges that ADA O'Brien's conduct in directing/authorizing the show-up identification directly and proximately caused Plaintiff to be identified, prosecuted, detained and convicted without reliable evidence, depriving him of his rights to due process and a fair trial under the Fifth, Sixth and Fourteenth Amendments and his right to be free from unreasonable seizure under the Fourth and Fourteenth Amendments. (TAC ¶366).

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009); *accord Hayden v. Patterson*, 594 F.3d 150 (2d Cir. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While a court must "accept as true" all "well-pleaded factual allegations in the complaint," it "need not consider conclusory allegations or legal conclusions couched as factual allegations." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021); *Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'"). A plaintiff must provide enough factual support that, if true, would "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The "court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *Revitalizing Auto Cmtys. Env't Response Tr. v. Nat'l Grid USA*, 92 F.4th 415, 436 (2d Cir. 2024). The court may also take judicial notice of documents "integral" to the complaint, *Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002), and "documents filed in other courts." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991). When the well-pleaded facts allow no more than an inference of a "mere possibility of misconduct," and a plaintiff has only alleged, rather than shown, an entitlement to relief, the federal pleading standard of Fed. Civ. R. P. 8(a)(2) has not been satisfied. *Iqbal*, 556 U.S. at 679.

# ARGUMENT

## POINT I

## THE TAC FAILS TO STATE A CLAIM AGAINST THE ESTATE

Plaintiff seeks damages from the Estate under 42 U.S.C. §1983, on the basis that ADA O'Brien deprived him of his rights to due process and a fair trial under the Fifth, Sixth and Fourteenth Amendments, and his right to be free from unreasonable seizure under the Fourth and Fourteenth Amendments, by directing/authorizing MVPD to conduct an unnecessary and impermissibly suggestive show-up identification. (TAC ¶¶363, 366).

### A. Plaintiff's Due Process and Unreasonable Seizure Claims Are Barred By The Statute of Limitations

The statute of limitations for a claim under 42 U.S.C. §1983 is three years. *See Day v. Morgenthau,* 909 F.2d 75, 79 (2d Cir. 1990). "Federal law determines when a section 1983 cause of action accrues, and [the Second Circuit has] ruled that accrual occurs when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013).

Plaintiff asserts that ADA O'Brien deprived him of his right to due process under the Fifth, Sixth and Fourteenth Amendments. The TAC's allegations with respect to ADA O'Brien are limited to his having directed/authorized MVPD to bring Plaintiff to the hospital for a show-up identification. The TAC alleges that ADA O'Brien directed/authorized the show-up identification on or about June 30, 1981. (*See* TAC ¶267(b); *see also* TAC ¶¶42, 70-76, 81-93).[3] Nothing in the TAC suggests that Plaintiff did not know of the purported due process violation until after June 30, 1981. To be sure, the TAC acknowledges that Plaintiff moved to suppress the show-up

[3] The Decision of the Hon. Henry J. Scudder dated February 16, 1983, in *People v. Jeffrey Koonce*, whereby the trial court suppressed the show-up identification, states that the show-up occurred on June 30, 1981. (Carley Decl. Ex. "C" at ¶5(a)).

identification on the grounds that it was impermissibly suggestive and thus violative of his due process rights. (TAC ¶¶125, 365; *see also* Carley Decl. Ex. "C"). *See Wheeler v. Slanovec*, No. 16-cv-9065(KMK), 2019 U.S. Dist. LEXIS 113679, at *14 (S.D.N.Y. July 9, 2019). Therefore, Plaintiff's due process claim must be construed as having accrued on June 30, 1981. Because Plaintiff did not commence this action against the Estate until June 26, 2026, well after the three-year statute of limitations period expired, his due process claim must be dismissed as untimely.

Plaintiff also asserts that he was deprived of his right to be free from unreasonable seizure under the Fourth and Fourteenth Amendments. The date of the allegedly illegal seizure begins the running of the statute of limitations. *See*, *e.g.*, *Allen v. Antal*, No. 12-cv-8024, 2014 U.S. Dist. LEXIS 79031 (S.D.N.Y. Mar. 13, 2014); *Peralta v. City of N.Y.*, No. 15-cv-4455(PKC), 2019 U.S. Dist. LEXIS 119988, at *7-8 (S.D.N.Y. July 18, 2019) ("claim for unlawful search and seizure (i.e. false arrest or false imprisonment) in violation of Peralta's Fourth Amendment rights…began to accrue when he received 'legal process,' here, when he was 'arraigned on charges'"); *Lopez v. Guziczek*, No. 21-cv-10099(NSR), 2025 U.S. Dist. LEXIS 72815 (S.D.N.Y. Apr. 16, 2025) ("accrual date of a Section 1983 cause of action for false arrest begins to run when the claimant becomes detained pursuant to legal process").

The TAC alleges that Plaintiff was detained and arrested on June 30, 1981. (TAC ¶93; *see also* TAC ¶¶82, 109, 116-117, 120, 122, 253). While the TAC curiously fails to disclose the fact or date of his arraignment, it must have occurred within a few days of his arrest since charges were filed against him. (*See* TAC ¶¶109, 111, 117, 225). *See Paige-Bey v. City of N.Y.*, No. 13-cv-7300(SLT)(RER), 2016 U.S. Dist. LEXIS 171504, at *10 n.3 (E.D.N.Y. Dec. 7, 2016). Therefore, Plaintiff's due process claim must be construed as having accrued in July/August 1981. Because Plaintiff did not commence this action against the Estate until June 26, 2026, well after the three-

year statute of limitations period expired, his unreasonable seizure claim must be dismissed as untimely.

**B. <u>ADA O'Brien Is Entitled To Absolute Immunity</u>**

The TAC must be dismissed as to the Estate because "prosecutors enjoy 'absolute immunity from §1983 liability for those prosecutorial activities intimately associated with the judicial phase of the criminal process.'" *Anilao v. Spota*, 27 F.4th 855, 864 (2d Cir. 2022). Prosecutors sued in their individual capacity may assert absolute immunity as a defense. *Deronette v. City of N.Y.*, No. 05-cv-5275(SJ), 2007 U.S. Dist. LEXIS 21766, at *11-12 (E.D.N.Y. Mar. 27, 2007) Courts grant a Fed. R. Civ. P. 12(b)(6) motion to dismiss on grounds of absolute immunity where the facts establishing the defense appear in the complaint. *Deronette*, *supra*, at *11-12, *citing Hill v. City of N.Y.*, 45 F.3d 653, 663 (2d Cir. 1995) (absolute immunity may be decided on a Rule 12(b)(6) motion where facts establishing the defense may be "gleaned from the complaint"). Moreover, district courts are encouraged to determine the applicability of an absolute immunity defense at the earliest appropriate stage, and preferably before discovery. *Deronette*, *supra*, at *12, 15.

The TAC pleads that Plaintiff had already been arrested by MVPD—based upon the victim's identification of Plaintiff from a photo array—when ADA O'Brien directed/authorized the show-up identification. (TAC ¶¶299, 267(b); *see also id.* ¶¶72-76, 79, 82-86). ADA O'Brien was thus cloaked with absolute immunity at the time he allegedly directed/authorized the show-up. *See*, *e.g.*, *Bermudez v. City of N.Y.*, No. 11-cv-750(LAP), 2013 U.S. Dist. LEXIS 20371, at *17 (S.D.N.Y. Feb. 14, 2013) (finding that prosecutor was not functioning as an investigator and thus entitled to absolute immunity for unconstitutional identification procedures related to a tainted line-up "[b]ecause Plaintiff had already been arrested by the time [prosecutor] arrived at the police

station"), *citing Hill*, 45 F.3d at 662; *see also Tabor v. N.Y.C.*, No. 11-cv-0195(FB), 2012 U.S. Dist. LEXIS 29004 (E.D.N.Y. Feb. 23, 2012) (prosecutor entitled to absolute immunity for pre-arraignment interview, where plaintiff had already been arrested based on the statement of the complaining witness); *Coakley v. Jaffe*, 49 F. Supp. 2d 615, 625 n.7 (S.D.N.Y. 1999) (citing cases).

Based on the foregoing, the TAC fails to state a claim against the Estate pursuant to 42 U.S.C. §1983, and, as such, Count Sixteen must be dismissed with prejudice.

## C. The TAC Fails To Plausibly Plead A 42 U.S.C. §1983 Claim Against ADA O'Brien

Assuming, *arguendo*, that Plaintiff's claims are not time-barred and/or that ADA O'Brien is not entitled to absolute immunity, the TAC must be dismissed as to the Estate because it fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. §1983, a plaintiff must plead that: (1) the defendants acted under "color of state law" and (2) their conduct or action deprived plaintiff of a right, privilege, or immunity guaranteed by the Constitution or laws of the United States. *Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir. 1994). Section 1983 "creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." *City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985). "'The factors necessary to establish a [section 1983] violation will vary with the constitutional provision at issue' because the elements of different constitutional violations vary." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020), *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

"A [section 1983] action, like its state tort analogs, employs the principle of proximate causation." *See Townes v. City of N.Y.*, 176 F.3d 138, 146 (2d Cir. 1999); *Wray v. City of N.Y.*, 490 F.3d 189, 193 (2d Cir. 2007) ("[section] 1983 should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions. Since the common law

recognized the causal link between the submission of a complaint and an ensuing arrest, we read [section] 1983 as recognizing the same causal link") (internal quotations and citations omitted).

The "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994), *quoting Moffitt v. Town of Brookfield*, 950 F.2d 880, 886 (2d Cir. 1991). "The Second Circuit has defined 'personal involvement' to mean direct participation, such as 'personal participation by one who has knowledge of the facts that rendered the conduct illegal,' or indirect participation, such as 'ordering or helping others to do the unlawful acts.'" *Johnson v. City of N.Y.*, No. 15-cv-8195, 2017 U.S. Dist. LEXIS 81359 (S.D.N.Y. May 26, 2017), *quoting Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001).

### 1. ADA O'Brien Did Not Violate Plaintiff's <u>Rights To Due Process And A Fair Trial</u>

The TAC alleges that ADA O'Brien's conduct in directing/authorizing the show-up identification directly and proximately caused Plaintiff to be identified, prosecuted, detained and convicted, in violation of his rights to due process and a fair trial under the Fifth, Sixth and Fourteenth Amendments. (TAC ¶¶363, 366). Plaintiff's due process claim (aside from being time-barred, as discussed in Point I(A) above) and fair trial claim fail to state a claim upon which relief can be granted.

To state a fair trial claim based on fabricated evidence, a plaintiff must plead that "an (1) investigating official (2) fabricate[d] information (3) that is likely to influence a jury's verdict, (4) forward[ed] that information to prosecutors, and (5) the plaintiff suffe[red] a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016). "[A] fair trial claim based on fabricated evidence requires a plaintiff to prove that a defendant's use of inaccurate information was 'knowing, as opposed to mistaken.'" *Davis-Guider*

*v. City of Troy*, No. 23-589, 2024 U.S. App. LEXIS 32451, at *7 (2d Cir. Dec. 23, 2024), *quoting Barnes v. City of N.Y.*, 68 F.4th 123, 129 (2d Cir. 2023).

Fatally, the TAC does not plausibly allege that ADA O'Brien fabricated any evidence that was used in connection with Plaintiff's prosecution. It is beyond cavil that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §1983." *Wright*, 21 F.3d at 501. While the TAC alleges that ADA O'Brien directed/authorized the show-up identification procedure, the TAC does not allege that ADA O'Brien participated in the show-up, was present for the show-up, or communicated with the victim prior to or in connection with the show-up, such that Plaintiff does not plausibly allege that ADA O'Brien was involved in the victim's identification of Plaintiff at the show-up. It is not even alleged that ADA O'Brien instructed MVPD to influence or coerce the victim into identifying Plaintiff at the show-up, or to conduct the show-up in an impermissibly suggestive manner so that the victim identified Plaintiff. The TAC does not even allege that ADA O'Brien knew that MVPD had executed the show-up in a suggestive manner. To the contrary, the TAC acknowledges that MVPD withheld "the circumstances" of how they executed the show-up from ADA O'Brien. (*See* TAC ¶¶91, 112(c), 113, 115). The TAC thus fails to plead the second element of Plaintiff's fabricated-evidence claim. *See Garnett*, 838 F.3d at 280 (explaining that "an arrestee must prove by a preponderance of the evidence that the officer created false information"); *Davis-Guider*, *supra*, at *7 ("Absent *scienter*, showing that the prosecution relied on false evidence is insufficient").

The TAC also fails to plausibly allege that ADA O'Brien forwarded fabricated evidence to prosecutors. The TAC does not allege that ADA O'Brien transmitted any evidence produced from the show-up identification procedure to other members of the WCDA. The TAC does not even allege that ADA O'Brien knew that the victim had identified Plaintiff at the show-up. The TAC

thus fails to plead the fourth element of Plaintiff's fabricated-evidence claim.

Simply put, ADA O'Brien's alleged involvement in Plaintiff's prosecution is limited to the single act of directing/authorizing MVPD to conduct an impermissibly suggestive show-up identification procedure. That act, however, was not *per se* improper. It is well-settled that there is no constitutional right not to be subjected to an unconstitutionally suggestive identification procedure. *Wray*, 490 F.3d at 193, *citing Wray v. City of N.Y.*, 340 F. Supp. 2d 291, 302 (E.D.N.Y. 2004); *see also Wray v. Johnson*, 202 F.3d 515, 524 (2d Cir. 2000) ("a suggestive procedure 'does not itself intrude upon a constitutionally protected interest'"), *quoting Manson v. Brathwaite*, 432 U.S. 98, 113 n.13 (1977); *King-Knight v. City of N.Y.*, No. 25-1047, 2026 U.S. App. LEXIS 30223, at *11 (2d Cir. Oct. 2, 2026) ("suggestive identification procedures, standing alone, do not themselves 'intrude upon a constitutionally protected interest'"), *quoting Wray*, 490 F.3d at 193; *Casillas v. Murray*, 662 F. Supp. 2d 300, 313 (W.D.N.Y. 2009) ("Show-up identification procedures are not inherently unconstitutional"); *U.S. v. Zelker*, 455 F.2d 714, 716 (2d Cir. 1972) (noting that "[i]t is now settled law that prompt on-the-scene confrontation is 'consistent with good police work,' and does not offend the [constitutional] principles established in *United States v. Wade*….") (citations omitted).

The TAC otherwise fails to plausibly allege that the impermissibly suggestive show-up identification procedure proximately caused Plaintiff's conviction and post-conviction detention. *See Townes*, 176 F.3d at 146; *Bermudez v. City of N.Y.*, 790 F.3d 368, 374 (2d Cir. 2015). Where, as is alleged here, a witness makes an identification following an impermissibly suggestive procedure, "the due process focus is principally on the fairness of the trial." *Wray*, 490 F.3d at 193, *quoting Wray*, 202 F.3d at 524. This is because "[t]he mere failure of a 'show-up' to pass constitutional requirements, without a showing of resulting prejudice, does not establish a

constitutional deprivation." *Cerbone v. Cnty. of Westchester*, 508 F. Supp. 780, 786 (S.D.N.Y. 1981). "[A] suggestive identification alone is [not] a constitutional violation; rather, the constitutional violation is that [plaintiff's] right to a fair trial was impaired by the admission of testimony regarding the unreliable identification." *Wray*, 490 F.3d at 193. "[I]t is the admission of testimony carrying such a 'likelihood of misidentification which violates a defendant's right to due process.'" *Wray*, 202 F.3d at 524, *quoting Neil v. Biggers*, 409 U.S. 188, 198 (1972).

Thus, "a constitutional violation occurs only if tainted evidence produced in an unlawful identification procedure is introduced at trial." *Thompson v. City of N.Y.*, 603 F. Supp. 2d 650 (S.D.N.Y. 2009), *citing Wray*, 490 F.3d at 193; *Hasan v. Onondaga Cnty.*, No. 18-cv-806(GLS)(ATB), 2018 U.S. Dist. LEXIS 131727, at *13 n.8 (N.D.N.Y. Aug. 2, 2018) ("If the identification procedures were unfairly suggestive, plaintiff's constitutional rights would not have been violated until he was convicted on the basis of the suggestive identifications"), *citing Wray*, 490 F.3d at 193. Here, the TAC confirms that evidence produced from the show-up identification procedure was suppressed by the trial court as "unconstitutionally suggestive" <u>before</u> Plaintiff's trial. (TAC ¶¶125, 365; *see also* Carley Decl. Ex. "C" at ¶6(a)). The show-up identification therefore did not result in a violation of Plaintiff's constitutional rights. *See Wray*, 490 F.3d at 193; *Thompson*, 603 F. Supp. 2d 650; *Perkins v. N.Y.C.*, No. 17-cv-423(RRM)(PK), 2019 U.S. Dist. LEXIS 167217, at *15-16 (E.D.N.Y. Sept. 27, 2019) (holding that unduly suggestive photo array and lineup identifications did not violate plaintiff's due process right to a fair trial because the trial court suppressed evidence of same). Because evidence produced from the impermissibly suggestive show-up identification procedure was never introduced at Plaintiff's criminal trial, a constitutional violation did not occur, such that ADA O'Brien's directive/authorization to conduct that show-up identification is not independently actionable under 42 U.S.C. §1983.

Plaintiff attempts to rescue his claim by alleging that "[a]lthough the showup identification was suppressed before trial, the suggestion it introduced rendered unreliable the in-court identification that the prosecution used to convict Mr. Koonce, and the trial court's 'independent source' ruling permitting that in-court identification was procured through Defendants' false testimony and their suppression of the true circumstances of the identification procedures." (TAC ¶365; *see also* TAC ¶¶125-128). In other words, the TAC purports to allege that the victim's in-court identification of Plaintiff was tainted by the prior show-up identification, such that ADA O'Brien bears liability for Plaintiff's conviction and post-conviction detention. (*See* TAC ¶126). This fails for two reasons.

First, the assertion that the victim's in-court identification was tainted by the show-up identification is entirely conclusory and speculative. The Court "need not consider conclusory allegations or legal conclusions couched as factual allegations." *Dixon*, 994 F.3d at 101; *Iqbal*, 556 U.S. at 678 (holding that "'naked assertion[s]' devoid of 'further factual enhancement'" are insufficient). Plaintiff does not offer a single fact explaining how the show-up tainted the victim's in-court identification. Notably, while the TAC acknowledges that the WCDA CRU team interviewed the victim as part of its reinvestigation, the TAC alleges that the victim confirmed only that he did not recall making an identification of the Plaintiff, not that he believed his in-court identification was influenced by the show-up. (*See* TAC ¶¶159, 161). Moreover, in the Decision and Order vacating Plaintiff's conviction, Judge McCarty determined that the victim's in-court identification was tainted, if anything, by the observation of Plaintiff in the confines of his hospital room during the felony hearing. (Carley Decl. Ex. "B" at p.3; *see also* TAC ¶118). There is no dispute that the victim had, prior to Plaintiff's trial, identified Plaintiff in a photo array (TAC ¶76), and observed Plaintiff during the felony hearing. (TAC ¶118). There is also no dispute that ADA

O'Brien was not involved in the photo array identification procedure or the felony hearing. Plaintiff's failure to disassociate the purported impact of the photo array and felony hearing from the purported impact of the show-up on the victim's subsequent in-court identification, exemplifies the conclusory and speculative nature of his allegation that the in-court identification was tainted by the show-up identification.

Second, even assuming, *arguendo*, that the show-up identification tainted the victim's in-court identification, the TAC fails to plausibly plead that ADA O'Brien's conduct caused the introduction of the in-court identification at the trial. "[A]n independent decision by a…court may break the chain of causation and defeat the claim." *King-Knight*, 2026 U.S. App. LEXIS 30223, at *11, *citing Wray*, 490 F.3d at 193-195, *and Townes*, 176 F.3d at 146-147; *Delamota v. City of N.Y.*, 683 Fed. Appx. 65, 67 (2d Cir. 2017) ("While a constitutional violation occurs when an unduly suggestive identification is admitted at trial, a plaintiff may not recover damages for such a violation if there is an intervening cause of that damage"). "[T]he causal chain is not broken when the [government] officer misled or coerced the intervening decisionmaker because the resulting decision is itself then 'tainted.'" *King-Knight*, 2026 U.S. App. LEXIS 30223, at *11, *citing Bermudez*, 790 F.3d at 374.

"Here, there is a clear and independent intervening actor—the trial court—that admitted the identification evidence." *Delamota*, 683 Fed. Appx. at 67. The TAC acknowledges that the Plaintiff moved to suppress evidence of the victim's show-up identification <u>and</u> to preclude the victim from making an in-court identification at the criminal trial. (*See* TAC ¶¶125-126; Carley Decl. Ex. "C" at ¶2). Thus, the trial court, over Plaintiff's objection, permitted the victim to make an in-court identification. (*See* TAC ¶¶125-126; Carley Decl. Ex. "C" at ¶2). While the TAC conclusively alleges that "the trial court's 'independent source' ruling permitting that in-court

identification was procured through Defendants' false testimony and their suppression of the true circumstances of the identification procedures," (TAC ¶365; *see also* TAC ¶¶125-128), the TAC does not—because it cannot—plausibly allege that ADA O'Brien in any way misled or coerced the trial court (as the intervening decisionmaker) in connection with that ruling.

First, the TAC does not allege that ADA O'Brien testified at the suppression hearing, transmitted statements or information to other members of the WCDA in connection with the suppression hearing, or prepared or presented the State's case in connection with the suppression hearing. Indeed, the TAC does not allege that ADA O'Brien prepared, presented or participated in any aspect of Plaintiff's prosecution other than the single act of directing/authorizing MVPD to conduct the show-up identification. As such, ADA O'Brien could not have misled or coerced the trial court into permitting the in-court identification for the simple reason that he is not alleged to have had any involvement in the suppression hearing. Again, it is beyond cavil that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §1983." *Wright*, 21 F.3d at 501.

Second, while the TAC alleges that the trial court permitted the victim to make an in-court identification, in part, because of his identification of Plaintiff in the photo array (*see* TAC ¶126; Carley Decl. Ex. "C" at ¶5(b)), and that evidence concerning the "true circumstances" of the photo array was withheld from the trial court at the suppression hearing (*see* TAC ¶126; *see also* TAC ¶365 ("suppression of the true circumstances of the identification procedures") (emphasis added)), the TAC does not allege that ADA O'Brien had any involvement in the photo array identification procedure. *See Wright*, 21 F.3d at 501 ("personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §1983").

Third, Plaintiff's assertion that the trial court permitted the victim to make an in-court identification because the "true circumstances" of the show-up identification procedure was withheld at the suppression hearing (*see* TAC ¶365), is explicitly refuted by the TAC. The TAC alleges the show-up was impermissibly suggestive because: (i) MVPD told the victim beforehand that he was about to see the person he had identified from the photo array (TAC ¶87); (ii) Plaintiff was presented to the victim while handcuffed (*id.* ¶88); (iii) Plaintiff was the only person presented to the victim (TAC ¶¶87-89); and (iv) the victim's life was not in danger and other witnesses were available (TAC ¶90). This information, however, was known by the trial court when it ruled that the victim had an independent source to make the in-court identification. For example, the trial court knew—because the victim had testified at the pretrial *Wade* hearing—"that Defendants Garcia and Salottolo had improperly primed [the victim] to identify Mr. Koonce." (TAC ¶125). The trial court also knew that Plaintiff was handcuffed and the only person presented during the show-up, since those facts were at all times known to Plaintiff and his defense counsel. Moreover, the trial court knew that the victim's life was not in danger, since that was a basis for which it suppressed the show-up identification. (Carley Decl. Ex. "C" at ¶5(c)).[4] The trial court thus knew about the "true circumstances" of the show-up identification procedure when it determined that an "independent source" existed for the in-court identification.[5]

The Second Circuit very recently addressed analogous circumstances in *King-Knight v. City of N.Y.* The plaintiff in *King-Knight* alleged that misconduct concerning a single-photo identification procedure caused the admission of an eyewitness's in-court identification. In holding

---

[4] The trial court also knew that three other eyewitnesses had failed to identify Plaintiff, since evidence of same was disclosed at the suppression hearing. (TAC ¶77).

[5] It is noted, of course, that Judge Scudder listed the evidence that he believed constituted an "independent source" for an in-court identification. Judge Scudder did not identify any evidence produced from the show-up identification procedure in that list. (*See* Carley Decl. Ex. "C" at ¶5).

that the plaintiff failed to state a claim, the Second Circuit ruled that:

> Although the criminal court determined at the *Rodriguez* hearing that the identification procedure was "totally improper and unconstitutionally suggestive," Am. Compl. ¶131, it nevertheless permitted Williams to make an in-court identification based on an independent source for her identification. Because the criminal court confronted the constitutional defect in the identification procedure and independently authorized Williams's in-court identification, the complaint does not plausibly allege that either defendant's alleged misconduct concerning that procedure caused the admission of Williams's identification or King-Knight's resulting conviction or incarceration. *See Wray*, 490 F.3d at 193 (explaining that a suggestive identification procedure "does not itself intrude upon a constitutionally protected interest" and holding that, absent evidence the officer "misled or pressured the prosecution or trial judge," the admission of identification testimony was caused by the prosecutor's and trial judge's intervening decisions (emphasis removed) (quotation omitted)).

*King-Knight*, 2026 U.S. App. LEXIS 30223, at *11-12.

Thus, even assuming, *arguendo*, that the trial court relied upon evidence produced from the show-up identification as a basis for its "independent source" ruling—and, to be clear, it did not (*see* Carley Decl. Ex. "C" at ¶5)—the independent decision of the trial judge to permit the in-court identification was a superseding act that broke the chain of causation between ADA O'Brien's alleged misconduct and Plaintiff's conviction and post-conviction detention. *See Wray*, 490 F.3d at 193; *King-Knight*, 2026 U.S. App. LEXIS 30223, at *11-12.

The TAC similarly fails to plausibly allege that the impermissibly suggestive show-up identification procedure proximately caused Plaintiff's pre-trial detention, charge or indictment. *See Townes*, 176 F.3d at 146; *Bermudez*, 790 F.3d at 374. The TAC does not allege any facts establishing that the show-up identification played a role in the pre-trial detention, charge or indictment. For example, the TAC confirms that MVPD had already detained and arrested Plaintiff based on the victim's photo array identification before ADA O'Brien ever directed/authorized the

show-up identification. (TAC ¶¶299, 267(b); *see also* TAC ¶¶72-76, 79, 82-86). While a defendant can still be liable if fabricated evidence results in an extended detention, *see Adams v. City of Syracuse*, No. 21-cv-0650(LEK)(ATB), 2022 U.S. Dist. LEXIS 41055 (N.D.N.Y. Mar. 8, 2022), the TAC here does not actually allege that evidence produced from the show-up identification procedure was referenced in MVPD's police reports, the charging instrument, introduced at Plaintiff's felony hearing or grand jury proceeding, or relied upon by the grand jury in its decision to indict.[6] The TAC thus fails to plausibly plead any causal link between ADA O'Brien's alleged misconduct and Plaintiff's pre-trial detention, charging and indictment.

Based on the foregoing, the TAC fails to state a claim against the Estate under 42 U.S.C. §1983 for violation of Plaintiff's rights to due process and a fair trial. As such, Count Sixteen must be dismissed with prejudice.

**2. ADA O'Brien Did Not Violate Plaintiff's Right To Be Free From Unreasonable Seizures**

The TAC alleges that ADA O'Brien's conduct in directing/authorizing the show-up identification directly and proximately caused Plaintiff to be identified, prosecuted, detained and convicted, in violation of his right to be free from unreasonable seizure under the Fourth and Fourteenth Amendments. (TAC ¶¶363, 366). This claim, in addition to being time-barred (as discussed in Point I(A) above), fails to state a claim upon which relief can be granted.

The Fourth Amendment, made applicable to the States by the Fourteenth Amendment, protects "the right of the people to be secure in their persons...against unreasonable...seizures." *See*

[6] While the TAC alleges that Plaintiff was indicted because "the WCDA presented Jeffrey Koonce's case to a grand jury through a false, misleading, and incomplete grand jury presentation" (TAC ¶¶120, 203, 252, 267(b)), and withheld material exculpatory evidence (TAC ¶¶121, 203), and because the grand jury was unaware of the exculpatory evidence (TAC ¶122), and goes to great lengths to identify the exculpatory evidence that was withheld (TAC ¶121), the TAC does not actually identify the evidence that was presented to the grand jury.

U.S. Const. Amend. IV; *see Mapp v. Ohio*, 367 U.S. 643, 650 (1961) (incorporating the Fourth Amendment as to state actors through the Fourteenth Amendment). This includes the right to be free from arrest without probable cause. *Iacobi v. Felix*, No. 19-cv-03245(RPK)(ST), 2022 U.S. Dist. LEXIS 163249 (E.D.N.Y. Sept. 9, 2022), *citing Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). "A §1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures,…is substantially the same as a claim for false arrest under New York law." *Weyant*, 101 F.3d at 852 (internal citations omitted). To plead a false arrest claim under Section 1983, a plaintiff must allege that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Guan v. City of N.Y.*, 37 F.4th 797, 804 (2d Cir. 2022) (citation and internal quotation marks omitted). "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §1983." *Wright*, 21 F.3d at 501.

The TAC does not allege facts establishing that ADA O'Brien was personally involved in Plaintiff's arrest. To be sure, the TAC alleges that Plaintiff was arrested by MVPD <u>before</u> ADA O'Brien directed/authorized the show-up identification procedure. (TAC ¶¶299, 267(b); *see also id.* ¶¶72-76, 79, 82-86). The TAC does not allege that ADA O'Brien personally effectuated that arrest, was present for that arrest, was consulted by MVPD before that arrest, or directed MVPD to make that arrest. The TAC also alleges that Plaintiff's arrest was based upon the victim's identification of Plaintiff from a photo array. (TAC ¶¶299, 267(b); *see also id.* ¶¶72-76, 79, 82-86). ADA O'Brien, however, is not alleged to have had any involvement in the photo array identification procedure.

Even assuming, *arguendo*, that Plaintiff was not under arrest at the time ADA O'Brien directed/authorized the show-up identification procedure, the TAC fails to plausibly allege that ADA O'Brien's singular act of directing/authorizing the show-up rises to the requisite level of personal involvement necessary to state a claim for false arrest. The TAC does not allege that ADA O'Brien participated in the show-up, was present for the show-up, knew that the victim had identified Plaintiff at the show-up, was consulted by MVPD after the show-up, made the determination that Plaintiff needed to be arrested, directed MVPD to make the arrest, or effectuated the arrest. Nor does the TAC allege that ADA O'Brien prepared, signed or was consulted in connection with the preparation or filing of Plaintiff's accusatory instrument. Plaintiff does not even allege facts giving rise to an inference that ADA O'Brien knew that a false arrest would occur as a result of the show-up identification procedure. To be sure, the TAC does not allege that ADA O'Brien communicated with the victim prior to or in connection with the show-up, or instructed MVPD to influence or coerce the victim into identifying Plaintiff at the show-up, or instructed MVPD to conduct the show-up in an impermissibly suggestive manner so that the victim identified Plaintiff. The TAC thus fails to plausibly allege any facts from which it can be reasonably inferred that ADA O'Brien knew that the victim would identify Plaintiff at the show-up and that MVPD, in turn, would rely upon that identification to arrest Plaintiff.

Assuming, *arguendo*, that the TAC plausibly alleges that ADA O'Brien was personally involved in Plaintiff's arrest, the TAC nevertheless fails to state a claim for false arrest because "[t]he existence of probable cause to arrest…is a complete defense to an action for false arrest." *Weyant*, 101 F.3d at 852. An officer has probable cause to arrest or detain "when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed

or is committing a crime." *Garcia v. Doe*, 779 F.3d 84, 92 (2d Cir. 2015). "When determining whether probable cause exists courts must consider those facts available to the officer at the time of the arrest and immediately before it." *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002). Courts should look to the "totality of the circumstances." *Id.* An officer is "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti v. New York Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997). "[I]t is irrelevant if ultimately the plaintiff is acquitted of the charges against him because the inquiry is whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest the plaintiff." *Forsythe v. City of Watertown*, 17-cv-1132(FJS)(TWD), 2020 U.S. Dist. LEXIS 45760, at *16 (N.D.N.Y. Mar. 17, 2020) (quotation marks and citations omitted).

"Even if probable cause to arrest is ultimately found not to have existed, an arresting officer will still be entitled to qualified immunity from a suit for damages if he can establish that there was 'arguable probable cause' to arrest." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004). "Arguable probable cause" exists "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* (*quoting Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)). "Qualified immunity from suit for false arrest is in part, therefore, a matter of second-order reasonableness: an officer is immune if it was reasonable for him to believe, reasonably, that the plaintiff was breaking the law." *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 416 (2d Cir. 1999).

"[P]robable cause exists if a law enforcement officer received information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity." *Banyan v. Sikorski*, No. 25-1425, 2026 U.S. App. LEXIS 11259, at *4 (2d Cir.

Apr. 21, 2026), *citing Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014); *Candelario v. City of N.Y.*, No. 12-cv-1206, 2013 U.S. Dist. LEXIS 48412, at *15 (S.D.N.Y. Apr. 3, 2013) ("eyewitness's unequivocal identification of an individual as the perpetrator of the crime generally establishes probable cause, as long as it is reasonable to believe the eyewitness under the circumstances"), *aff'd*, 539 F. App'x 17 (2d Cir. 2013) (summary order). "[T]he veracity of complaints by citizens who are the victims of the very crimes they report to the police is assumed." *Walker v. City of N.Y.,* No. 15-cv-500(NG)(ST), 2017 U.S. Dist. LEXIS 99238, at *9 (E.D.N.Y. June 27, 2017); *Hudson v. Cnty. of Dutchess*, No. 12-cv-5548(KMK), 2015 U.S. Dist. LEXIS 154632 (S.D.N.Y. Nov. 14, 2015).

The TAC alleges that MVPD arrested Plaintiff because the victim identified Plaintiff from a photo array. (TAC ¶¶71-72, 74-76, 82). The TAC does not allege that ADA O'Brien was not involved in the photo array identification procedure. The TAC does not allege that ADA O'Brien participated in or was present for the show-up identification procedure. The TAC also confirms that MVPD withheld the impermissibly suggestive nature of both the photo array and show-up identification procedures from WCDA (including ADA O'Brien). (TAC ¶¶9, 69, 91, 109-116, 130, 207, 231, 240-242). The TAC alleges that MVPD did this by, *inter alia*, falsifying police reports, lying in interviews with WCDA and fabricating or concealing evidence. (TAC ¶¶9, 69, 91, 109-116, 130, 207, 231, 240-242). Thus, to the extent the TAC plausibly pleads that ADA O'Brien was involved in Plaintiff's arrest, it was objectively reasonable for ADA O'Brien to believe that probable cause existed since he relied on information provided by MVPD. "When making a probable cause determination, police officers are 'entitled to rely on the allegations of fellow police officers.'" *Panetta*, 460 F.3d at 395, *quoting Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000). "Absent significant indications to the contrary, an officer is entitled to rely on his fellow

officer's determination that an arrest was lawful." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006), *quoting Loria v. Gorman*, 306 F.3d 1271, 1288 (2d Cir. 2002).

Based on the foregoing, the TAC fails to state a claim against the Estate under 42 U.S.C. §1983 for violation of Plaintiff's right to be free from unreasonable seizure. As such, Count Sixteen must be dismissed with prejudice.

**D. <u>ADA O'Brien Is Entitled To Qualified Immunity</u>**

Even if ADA O'Brien's directive/authorization to MVPD to conduct the show-up identification was an investigative function, he is entitled to qualified immunity because there was no clearly established law that such a directive/authorization was unconstitutional. Qualified immunity shields government officials from civil liability resulting from the performance of their discretionary functions "if either (a) the Defendant's conduct did not violate clearly established law, or (b) it was objectively reasonable for the Defendant to believe that his action did not violate such law." *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 250 (2d Cir. 2001). "Courts should resolve a qualified immunity at the earliest stage possible, and preferably before discovery." *Deronette*, *supra*, at *17, *citing Francis v. Coughlin*, 849 F.2d 778, 780 (2d Cir.1988). To determine whether qualified immunity applies, courts consider "whether the facts shown make out a violation of a constitutional right and whether the right at issue was clearly established at the time of the defendant's alleged misconduct." *Tankleff v. Cnty. of Suffolk*, No. 09-cv-1207(JS)(AYS), 2017 U.S. Dist. LEXIS 97472 (E.D.N.Y. June 23, 2017).

Here, ADA O'Brien's conduct did not violate a clearly established law, or at the very least it was objectively reasonable for ADA O'Brien to believe that his conduct did not violate a law, since there is no constitutional right not to be subjected to an impermissibly suggestive show-up identification procedure. *See Wray*, 490 F.3d at 193; *King-Knight*, 2026 U.S. App. LEXIS 30223,

at *11; *Cerbone*, *supra*. Critically, the TAC does not allege that ADA O'Brien knew that the victim was not in danger of dying when he directed/authorized the show-up identification. Nor does the TAC allege that ADA O'Brien instructed MVPD to influence or coerce the victim into identifying Plaintiff at the show-up, or to conduct the show-up in an impermissibly suggestive manner so that the victim identified Plaintiff. The TAC does not even allege that ADA O'Brien knew MVPD had executed the show-up in an impermissibly suggestive manner or that the victim had identified Plaintiff at the show-up. To the contrary, the TAC acknowledges that MVPD withheld "the circumstances" of how they executed the show-up from the WCDA. (*See* TAC ¶¶91, 112(c), 113, 115).

In light of the foregoing, it was objectively reasonable for ADA O'Brien to conclude that his act of directing/authorizing a show-up identification did not violate clearly established law. *See McLean v. Cnty. of Westchester*, No. 17-cv-4492(CS), 2018 U.S. Dist. LEXIS 204269, at *22-23 (S.D.N.Y. Dec. 3, 2018) (holding that "even if ADA Prisco's directive to [MVPD Detective] DiMase [not to include his opinion in his investigative reports] was of police nature, thereby precluding absolute immunity, she would at the very least be qualifiedly immune, because there is no clearly established law that such an instruction is unconstitutional"), *citing Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993) (government officials entitled to qualified immunity and "are not subject to damages liability for the performance of their discretionary functions when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known") (internal quotation marks omitted).

Based on the foregoing, the TAC fails to state a claim against the Estate pursuant to 42 U.S.C. §1983, and, as such, Count Sixteen must be dismissed with prejudice.

## CONCLUSION

**WHEREFORE**, in view of the foregoing, Defendant Christopher J. O'Brien as Executor of the Estate of James H. O'Brien respectfully requests that the Court grant his motion for an Order, pursuant to Fed. R. Civ. P. 12(b)(6), dismissing with prejudice the Third Amended Complaint, together with such other and further relief as the court deems just and proper.

Dated: White Plains, New York
November 5, 2026

TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP

By: *J. Patrick Carley, III*

J. Patrick Carley, III, Esq.
445 Hamilton Avenue, Suite 900
White Plains, New York 10601
Telephone: (914) 347-2600
Email: pcarley@tlsslaw.com
*Attorneys for Defendant Christopher J. O'Brien as Executor of the Estate of James H. O'Brien*

**WORD COUNT CERTIFICATION**

I, J. Patrick Carley, III, an attorney admitted to practice before the United States District Court for the Southern District of New York, certifies, in accordance with and pursuant to Local Civil Rule 7.1 of the United States District Courts for the Southern and Eastern Districts of New York, and Individual Practice and Rule II(B) of the Hon. Kenenth M. Karas, U.S.D.J., that the foregoing Memorandum of Law of Defendant Christopher J. O'Brien as Executor of the Estate of James H. O'Brien in Support of Motion to Dismiss the Third Amended Complaint contains 8,108 words, exclusive of the caption, table of contents, table of authorities and signature block, and the certification as to the foregoing relies upon the word count feature of the word-processing system used to prepare the document, Microsoft Word.

Dated: White Plains, New York
November 5, 2026

TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP

By: *J. Patrick Carley, III*

J. Patrick Carley, III, Esq.
445 Hamilton Avenue, Suite 900
White Plains, New York 10601
Telephone: (914) 347-2600
Email: pcarley@tlsslaw.com
*Attorneys for Defendant Christopher J. O'Brien as Executor of the Estate of James H. O'Brien*